## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHOUKRY FAUNTLEROY, ) | |
| Plaintiff, Pro Se, ) | |
| ) | |
| v. ) | CIV. NO. |
| ) | |
| ONEMAIN FINANCIAL, d/b/a/ ONEMAIN, ) | **VERIFIED COMPLAINT** |
| ONEMAIN HOLDINGS, INC., ONEMAIN ) | **FOR DAMAGES AND** |
| FINANCIAL HOLDINGS, LLC, ONEMAIN ) | **DEMAND FOR JURY** |
| FINANCIAL GROUP, AMERICAN GENERAL, ) | **TRIAL** |
| CITIFINANCIAL, EQUITY ONE, INC., ) | |
| SPRINGLEAF CONSUMER LOAN, ) | |
| SPRINGLEAF FINANCIAL SERVICES, ) | |
| Defendant. ) | |

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, SHOUKRY FAUNTLEROY, Pro Se, pursuant to Pa.R.C.P. 1007, files this Verified Complaint against Defendant ONEMAIN FINANCIAL, for violation of the Truth in Lending Act and other relief and in support thereof avers as follows:

### NATURE OF THIS ACTION

1. This is a Civil Action seeking damages, injunctive relief, and declaratory relief arising from Defendant's unlawful actions violating United States Federal Law and Codes, which have directly harmed the Plaintiff's rights, property, and interests.

2. This Action arises under the United States Civil Statutes for the United States of America, primarily the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*

1

3.  This Action follows exhaustion of all available administrative remedies, which have proven inadequate to address the violations and continuing harms described herein.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and Local Civil Rule 53.2(3).

5.  The amount of money damages sought are in excess of $150,000 exclusive of interest and costs. This controversy exceeds the minimum jurisdictional limits of this Court.

6.  Federal jurisdiction for this Complaint arises under the Truth in Lending Act ("TILA"), per 15 U.S.C. 1640.

7.  Venue is proper in this Court per 28 U.S.C. § 1391(b)(2) as the Defendant's business is owned and operated in Monroe County, in the Commonwealth of Pennsylvania and the cause of action arose in Monroe County, in the Eastern District of Pennsylvania.

8.  Venue is proper as Plaintiff resides in Monroe County, Pennsylvania.

9.  Venue is further proper in this Court because the locations, where the incidents described herein occurred or accrued, are within Monroe County, in the Commonwealth of Pennsylvania.

## PARTIES

10. Plaintiff, SHOUKRY FAUNTLEROY (hereinafter "Plaintiff"), is an adult individual residing at 276 Powderhorn Road, Henryville, PA 18332.

11. Defendant ONEMAIN FINANCIAL is a corporation licensed by the Pennsylvania Department of Banking and Securities under the Consumer

Discount Company Act ("CDCA"), 7 P.S. § 6201 *et seq.*, doing business in Monroe County, Pennsylvania, with a principal place of business located at 156 Eagles Glen Plz., Ste 101, East Stroudsburg, PA 18301-1351.

## AUTHENTICITY OF EXHIBITS

12. All exhibits accompanying this Complaint are true and correct copies of the original documents. The exhibits are incorporated herein by reference as though fully set forth in this Complaint.

## FACTUAL ALLEGATIONS

13. Defendant OneMain Financial (hereinafter "Defendant") is a consumer lender that primarily offers personal loans and auto loans, including secured and unsecured options with more than 1,400 branches in 44 states, targeting nonprime customers, and potentially granting borrowers access to credit.

14. Nonprime financing provides loans and credit to consumers who don't qualify for traditional "prime" loans due to their lower credit scores, limited credit history, or other financial factors like bankruptcy or financial hardship. Nonprime financing typically comes with higher interest rates and fees, which Defendant utilizes to exploit borrowers, such as the Plaintiff.

15. Defendant does business as the numerous entities captioned above.

16. On May 10, 2024 Plaintiff visited Defendant's principal place of business located at 156 Eagles Glen Plz., Ste 101, in East Stroudsburg, Pennsylvania for the purpose of obtaining a secured loan of $15,000.00, as approved and promised by Defendant in previous communications.

17. Defendant instead offered Plaintiff a secured loan of $12,700.00 in exchange for the title to a vehicle owned by Plaintiff, a 2014 Ford Taurus

Interceptor, even though Defendant originally promised $15,000.

18. Defendant OneMain Financial's Agent led Plaintiff to a room in the rear of business location and was seated next to a computer monitor screen. Defendant stated that the $15,000 would have been available if vehicle had full coverage insurance, though other agents confirmed the inverse to be true, which were all confusing to Plaintiff.

19. Defendant manipulated the display of a digital document by swiping the screen and clicking a mouse.

20. The document was not made available to Plaintiff in print at the time of supposed acceptance, even after Plaintiff's distinct request to Defendant.

21. Plaintiff is usually familiar with reviewing printed contracts and signing paper agreements along with other parties to properly execute them with full disclosure and reasonable opportunity to review thoroughly.

22. In apparent confusion about the process, Plaintiff asked Defendant about the stage of process. Defendant abruptly responded, "We're just signing."

23. Documents which Plaintiff knowingly signed with a wet ink signature at Defendant's place of business on May 10, 2024, were related to the surrendering of vehicle title, allowing Defendant to place a hold or lien on the vehicle until debt was paid in full. This was understood by Plaintiff.

24. Plaintiff subsequently learned that the aforementioned digital document was Defendant's loan agreement, with terms and conditions that Plaintiff would never accept knowingly. A copy is attached as "EXHIBIT A".

25. Defendant's loan agreement, its questionable method of presentation to Plaintiff and its supposed acceptance are a product of the Defendant's deceitful practices, including misrepresentation, concealment, economic duress, and undue influence.

26. The Defendant's practices and agreement's terms, including but not limited to, hidden fees, section clauses, prepayment penalties, exorbitant interest rates, and expectations after payment were not explained to or

understood by the Plaintiff. Plaintiff only learned of these hidden characteristics of the Defendant and agreement as time progressed.

27. Other concerning factors surrounding Defendant's practices and loan agreement, which were concealed or misrepresented on May 10, 2024:

    i. Misleading statements in various sections throughout agreement;

    ii. predatory lending at usurious rates;

    iii. hidden fees and penalties related to prepayment;

    iv. potential negative impacts on Plaintiff for furnishing prepayment of secured loan before projected maturity date;

    v. specific methods of payment accepted by Defendant, i.e., cashier's checks, which Defendant verbally confirmed this form of payment was necessary to immediately close loan account;

    vi. hidden obligations and undisclosed requirements of Plaintiff, including additional performance necessary even after delivering payments which satisfied all disclosed obligations in relation to agreement and secured loan transaction;

    vii. ambiguity regarding terms of electronic consent, general expectations and procedures related to agreement, performance, duties, and payments;

    viii. Plaintiff's entitlement to "receive a refund of unearned charges in accordance with law";

    ix. Discrepancy of disbursed amount of $12,700 to Plaintiff and $12,800 listed on loan agreement;

    x. fields populated with "N/A" or left blank which were not explained.

28. Upon review of the loan agreement digital document at a much later date, since the document was not immediately made available to Plaintiff, Plaintiff discovered specific wording and fields which illustrate contradictory, deceitful and further confusing terms.

    i.  "... have received and read a fully completed, legible copy of all of the documents comprising this Agreement"[1]

   ii.  "NOTICE TO CONSUMER: 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law."[2]

  iii.  Two fields are displayed at the bottom of agreement for witnesses to sign, but no witnesses were present, mentioned, required, or available to sign. "N/A" is in each of these fields of the digital version of this agreement.

  iv.  There are fields for initials on each page between first and last pages of document to demonstrate the borrower's review and understanding each of the agreement's sections. "N/A" is in each of these fields of the digital copy of this agreement.

   v.  Two fields are displayed at the bottom of agreement for borrower or co-maker to print name, but the fields are blank in digital copy obtained by Plaintiff.

---

[1] *These terms could not feasibly be read, understood and agreed to if the version of agreement presented to borrower/Plaintiff was not a fully completed, printed, legible copy to review and sign.*

[2] *This section of document references the agreement as a paper, however, it is not a paper and was not presented in paper form. Plaintiff did not sign or receive a paper version of agreement to review, initial or sign, despite the agreement terms which state that he was entitled to it. Plaintiff also prepaid balance of loan on August 1, 2024 and was penalized for that action. Furthermore, Plaintiff did not receive a refund of unearned charges in accordance with law.*

29. Defendant denied Plaintiff's request to print the agreement so that Plaintiff can properly review the agreement. Defendant's undue influence pressured Plaintiff and manipulated him to attempt to review it and complete acceptance of the agreement by tapping on a computer screen.

30. Defendant refused to provide agreement via paper to properly review and sign the document at the date and time of supposed acceptance.

31. Defendant did not allow for Plaintiff to review a printed, legible version of agreement contract to accept with a wet ink signature.

32. Plaintiff was confused and unclear on the method of presentation as well as the overall terms of loan agreement.

33. The Defendant's deceitful practices and terms of electronic agreement were unorthodox, confusing and not understood by Plaintiff.

34. The wording in Defendant's Agreement which Plaintiff subsequently discovered are misleading, conflicting, confusing, and exploitive.

35. The Defendant's company policies and legal nature relating to electronic consent agreement were not disclosed or explained to Plaintiff.

36. Defendant did not satisfy the requirements of 15 U.S.C. § 7001(c) for the use of electronic Truth in Lending disclosures.

37. Defendant's actions and practice hindered Plaintiff's decision-making.

38. Plaintiff did not and could not actually review the loan agreement to fully understand it at the time of supposed acceptance.

39. Therefore, no terms or conditions in the loan agreement are enforceable against Plaintiff.

40. Defendant OneMain generated an account number related to Plaintiff's secured loan: 10083874 / 466810083874

41. Plaintiff subsequently recognized even more of the deceitful practices of Defendant, including unconscionable acts conducted with persons known to Plaintiff. He decided to expedite advance payment of the secured loan

as soon as possible to terminate any and all obligations to Defendant.

42. Plaintiff began making plans to conduct a sale of the motor vehicle of which Defendant held the title to in relation to the secured loan transaction. The title transfer was scheduled for beginning of August.

43. On or about July 8, 2024, Plaintiff requested a total payoff amount for loan, attached as "EXHIBIT B". The email from Defendant states, "The payoff amount for your account, if paid by 07/18/24, is $13,390.07."

44. On July 18, 2024, Plaintiff made a payment of $355.34, bringing the payoff amount down to $13,034.73. Statement attached as "EXHIBIT C".

45. On or about July 29, 2024, Plaintiff called Defendant to confirm payoff amount and verify the accepted payment methods to obtain a release of the Defendant's lien or hold on motor vehicle title as soon as possible.

46. Defendant confirmed that bank teller/cashier's checks are accepted and treated as cash. Plaintiff was told that preferred payment method will immediately be credited to account and release any hold or lien which Defendant may have on vehicle title which was secured for the loan.

47. On August 1, 2024, Plaintiff furnished all necessary payments to Defendant in order to extinguish the debt of the secured loan.

48. Presentment at the place of payment included an instrument of $8400.00 which was surrendered and delivered as full payment to Defendant at 156 Eagles Glen Plz., Ste 101, East Stroudsburg, PA 18301.

49. In Plaintiff's August bank statement, attached as "EXHIBIT D" are shown the four separate payments made to Defendant on August 1, 2024 to pay the full balance total due of the secured loan in the amount of $13,034.73:

    i.   -8,400.00  Withdrawal by Check 00 450967 Disbursed 8,400.00

    ii.   -1,500.00  Withdrawal by Check 00 450970 Disbursed 1,500.00

    iii.   -634.73  Withdrawal Bill Payment #669653 PNM * OneMain Financia Santa Clara CA

    iv.   -2,500.00  Withdrawal Bill Payment #862496 PNM * OneMain Financia Santa Clara CA

50. Even with the absence of a valid and enforceable agreement, Plaintiff performed all obligations known to him by personally delivering prepayment of total balance due of secured loan on August 1, 2024 via the two debit card transactions and two cashier's checks detailed in Paragraph 49 and in the redacted bank statement "EXHIBIT D".

51. Upon presentment of payment to Defendant and its receipt thereof, Defendant provided Plaintiff with a release of lien document.

52. Defendant would only furnish this release document, which was later found to be notarized with disqualifying interest by Defendant, if the loan was paid in full with immediately available funds, i.e., a cashier's check.

53. On or about August 3, 2024, Plaintiff travelled to Pennsylvania Department of Transportation ("PennDOT") at its Harrisburg Riverfront Office Center at 1101 S. Front Street in Harrisburg, Pennsylvania.

54. Plaintiff utilized the aforementioned release of lien document, attached as "EXHIBIT E", to obtain clean title of the vehicle, attached as "EXHIBIT F", so that it can be transferred to a buyer in the sale of the motor vehicle.

55. The OneMain Statement of Affiliation document lists all of the names which Defendant does business as, attached as "EXHIBIT G".

56. The next billing statement received from Defendant reflected all payments made by Plaintiff to extinguish the debt and included a congratulatory message for paying off the loan, attached as "EXHIBIT H".

57. Plaintiff satisfied all known expectations and financial obligations to Defendant on August 1, 2024.

58. Trust in Defendant was eroded since May of 2024 and Plaintiff was relieved to have completed the transaction with Defendant and would no longer conduct business with Defendant thereafter.

59. Unfortunately, that was not the end of Defendant's harmful actions.

60. On September 19, 2024, Defendant made unauthorized contact with Plaintiff's financial institution, NE PA Federal Credit Union.

61. After several missed calls from Defendant, on or about September 23, 2024 at 3:53PM EST, the Plaintiff answered a phone call from Defendant who claimed that a cashier's check delivered to Defendant by Plaintiff was lost after the acceptance which took place on August 1, 2024.

62. Defendant detailed its failure to deposit the aforementioned negotiable instrument in a timely manner and allegedly lost the instrument while transporting it elsewhere. Defendant did say, "Sorry" to Plaintiff.

63. Plaintiff still did not understand what happened with the funds the Defendant received from Plaintiff, and given the negative experiences with Defendant, he did not trust the nature and intention of Defendant's repeated calls and requests to Plaintiff.

64. During that phone call with Defendant, Plaintiff never made a promise to pay this alleged debt again; or to issue a stop payment on the cashier's check presented to Defendant; or to contact his banking institution to reissue another check payment to Defendant; despite all of Defendant's false statements or coercive requests to manipulate Plaintiff to do so.

65. During that phone call, Plaintiff ignored Defendant's request for him to perform questionable acts related to the negotiable instrument of $8,400.00. Defendant even offered to cover any fees or related charges.

66. Plaintiff instructed the Defendant to email him exactly what happened and detail the request, to have a record of the conversation and to document the Defendant's supposed intentions, attached as "EXHIBIT I".

67. Plaintiff's mistrust for Defendant grew even more and he did not want anything to do with Defendant, so he was especially wary of Defendant.

68. During that phone call, Plaintiff did state to Defendant that he would contact his own banking institution. Plaintiff's intention was to obtain information from a more trustworthy source, such as his banking institution and its staff, with whom he had developed a rapport.

69. Plaintiff contacted his banking institution who verified that he was not

responsible for the payment once accepted by Defendant and that the Defendant was solely responsible for handling and processing of the negotiable instrument presented to Defendant on August 1, 2024.

70. Noted on cashier's check is the responsibility to deposit the funds in a timely manner as the instrument is "VOID AFTER 60 DAYS".

71. Defendant's documented dishonor of the aforementioned negotiable instrument is unlawful per UCC 3-603(b) and PA Code 13 Pa.C.S. § 3603.

72. These documented negligent actions are the total responsibility of the Defendant, not the Plaintiff, despite the Defendant's various attempts to deceive and coerce Plaintiff to perform and pay for Defendant's Professional Negligence and Breach of Fiduciary Duties.

73. Defendants contact with third parties falsely implied that one of the cashier's checks the Plaintiff delivered to the Defendant was not honorable, or that Plaintiff owed Defendant performance and payment, wrongfully inferring the illegitimate fault or responsibility of Plaintiff.

74. Defendant has failed to correct the violations related to Negligence in August of 2024 and willfully continued violating Plaintiff ever since.

75. Defendant misrepresented facts to Plaintiff and third parties, including his financial institution in order to coerce him to present another payment of at least $7,765.27, and up to $15,974.71.

76. The most recent fraudulently reported balance by Defendant is $11,231 according to Credit Karma per Plaintiff's credit report, attached as "EXHIBIT J".

77. All amounts are fraudulent, disputed, invalid, and unverified charges which the Defendant utilizes in repeated attempts to manipulate, defraud, and extort the Plaintiff, recent statement attached as "EXHIBIT K". Conflicting figures in OneMain's dashboard attached as "EXHIBIT L".

78. None of the aforementioned monetary figures equal the amount of $8,400.00 furnished to Defendant via a valid cashier's check, which the

Defendant apparently mishandled and dishonored after Plaintiff personally delivered it to Defendant on August 1, 2024.

79. Plaintiff had reasonable expectation for Defendant to handle their fiduciary responsibilities as required by law, maintain accountability, correct the issues on their end, and discontinue harassing him.

80. However, Defendant continued to make unauthorized contact with Plaintiff, including phone calls, and emails with fraudulent and deceptive billing statements, the most recent one attached as "EXHIBIT K".

81. Since September of 2024, Defendant's documented wrongful actions became willful, increasingly abusive, deceitful and further confusing.

82. The Unfair Trade Practices and Consumer Protection Law ("UTPCPL") renders it unlawful for any person engaging in a trade or business to commit unfair and deceptive acts and practices per 73 P.S. § 201 2(4).

83. October 10, 2024, Plaintiff received a deceptive email from Defendant, falsely stating that Plaintiff's banking institution returned the check for $8400.00 and that is why his "payment could not be processed".

84. An exact quote from Defendant's email which attempted to defraud Plaintiff, attached in totality as "EXHIBIT M", states the following:

  i.  "Your bank returned the payment you made on 10/9/2024 for $8,400.00, so we weren't able to apply it to your loan balance."

85. The material falsehoods in this email received by Defendant are disproved by evidence in exhibits and verified allegations in this action. Specifically:

  i.   Plaintiff did not make any payment to OneMain on 10/9/2024.

  ii.  Plaintiff's bank did not return any payment delivered to Defendant.

  iii. Defendant's false statements are not true and are not a valid reason why any payment received from Plaintiff was not processed.

86. Defendant's documented deceptive acts and practices, and use of wire communication to do so, are in violation of various laws, including the Fair Credit Extension Uniformity Act ("FCEUA"), per 18 U.S.C. § 1343.

87. Plaintiff's mistrust in Defendant has grown exponentially at this point.

88. On December 28, 2024, Plaintiff sent a cease-and-desist notice and official dispute of any alleged debt to Defendant via certified mail, appended as "EXHIBIT N" along with two other notices sent certified.

89. Defendant repeatedly violated that cease-and-desist notice by contacting Plaintiff by phone calls, emails, inaccurate billing statements detailing unauthorized charges, and fraudulent entries to his credit profile.

90. Defendant's actions of charging hidden or excessive fees, discriminatory lending practices, misleading loan terms, providing inaccurate credit reporting, and engaging in abusive debt collection practices are all violations of the Consumer Financial Protection Act of 2010 ("CFPA").

91. Defendant's unconscionable acts surrounding the misleading electronic agreement in place of printed, written documents and handwritten signatures, in addition to the documented record of deceit via electronic communications demonstrate Defendant's deceitful practices to confuse, manipulate and coerce the Plaintiff to participate in Defendant's Fraud.

92. The Defendant has demonstrated a pattern of disregard for fiduciary duties and obligations according to Federal Law and laws of the Commonwealth of Pennsylvania. Additionally, and specifically, Defendant has willfully violated the following:

    I. The Truth in Lending Act ("TILA");

    II. Uniform Commercial Code ("UCC");

    III. Consumer Financial Protection Act of 2010 ("CFPA");

    IV. Fair Credit Reporting Act ("FCRA");

    V. Fair Credit Extension Uniformity Act ("FCEUA");

    VI. Fair Debt Collection Practices Act ("FDCPA");

    VII.  Telephone Consumer Protection Act of 1991 ("TCPA");

   VIII.  Code of Federal Regulations ("CFR");

    IX.  Equal Credit Opportunity Act ("ECOA")

    X.  Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

93. After satisfaction of this debt on August 1, 2024, Defendant repeatedly contacted Plaintiff by email and called Plaintiff on his cellular telephone to collect another alleged debt. Defendant conducted unauthorized contact of more than twenty-six (26) documented times.

94. The Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff, especially after Defendant was served with a cease-and-desist notice sent on December 28, 2024. Defendant did not have consent.

95. Plaintiff's credit score was reduced around 110 points as a result of Defendant's wrongful actions.

96. On December 29, 2024, Plaintiff was subsequently refused credit by multiple creditors who had formerly extended credit to him, attached as "EXHIBIT O".

97. Creditors which denied Plaintiff credit even included Defendant OneMain Financial, attached as "EXHIBIT P", in response to a credit application to multiple creditors at once via LendingTree's website.

98. On April 28, 2024, Plaintiff was denied a student loan, necessary to pay for schooling, evidence of this denial is attached as "EXHIBIT Q".

99. Plaintiff has never been denied access to a student loan prior to his engagement with Defendant OneMain Financial.

100. Plaintiff was subsequently unable to register for classes necessary to complete his college degree. This harm has impeded Plaintiff's earning capacity, business endeavors, and further delayed his educational goals.

101. On May 24, 2025, Plaintiff was denied a credit line by yet another

creditor, impeding his ability to obtain necessary equipment for work and school, attached as "EXHIBIT R".

102. Plaintiff does not recall a time when he was ever denied credit lines or loans in this manner before engaging with Defendant.

103. The Defendant breached its respective duty to the Plaintiff and have caused substantial harm to him as demonstrated in this Complaint and the preponderance of evidence in the attached exhibits.

104. Plaintiff has filed complaints with various agencies while seeking remedy.

105. On June 4, 2025, Defendant's false statements made in response to Plaintiff's administrative complaints/reports, including to the Consumer Financial Protection Bureau ("CFPB") further documents Defendant's conduct of fraud and misrepresentation, attached as "EXHIBIT S".

106. Plaintiff refutes all of the Defendant's false statements and fraudulent charges, including those detailed in this Action.

107. Similarly situated victims have filed actions against Defendant, including civil court cases filed in the U.S. District Court Eastern District of Pennsylvania : 2:21-cv-05576-WB, and 2:19-cv-03042-JDW

108. The allegations of the aforementioned cases are concerningly similar to the experience of Plaintiff in regards to the deceitful method in which agreement was presented, how the Defendant purposefully deceived Plaintiff into unknowingly accepting concealed terms of that agreement, and how Defendant persistently harassed Plaintiff about an alleged debt.

109. These two civil cases and the factual allegations contained within Plaintiff's Complaint, reveal a pattern of Defendant's predicate acts within a 10-year period, demonstrating Racketeering activity.

110. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

111. Defendant has been documented performing various Unfair, Deceptive,

Or Abusive Acts or Practices ("UDAAP") demonstrated in the material allegations detailed in this Complaint and in the attached Exhibits.

112. The Defendant's coercive tactics and fraudulent, abusive actions described in this Complaint are indicative of a major pattern of deceptive practices which target and exploit unsuspecting "nonprime" borrowers.

113. These harms are continuing in nature and cannot be adequately remedied without this Court's intervention.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

114. Plaintiff has fully exhausted all available and known administrative remedies prior to filing this action, including:

    i.    Submission of Cease-and-Desist Notice, Notices of Dispute, and Demands for Resolution, directly to Defendant via certified mail on December 28, 2024, July 2, 2025, and July 12, 2025, "EXHIBIT N".

    ii.    Allowance of 12 months for Defendant to resolve errors and remedy the dispute during an informal resolution period, which Defendant failed to remedy any of the issues or adhere to those notices sent.

    iii.    Submission of CFPB Complaint ID #: 250512-20726250

    iv.    Submission of a Better Business Bureau Complaint #: 23586869

    v.    Submission of a Pennsylvania Office of Attorney General ("OAG"), Bureau of Consumer Protection Matter #: BCP-25-05-013591

    vi.    Submission of a complaint to Pennsylvania Department of Banking and Securities, Consumer Services Office Case #: 20250895

    vii.    Submission of an FTC Identity Theft Report #: 191800665

115. Further pursuit of administrative remedies or alternative dispute resolution would be futile because the Defendant has not demonstrated any efforts to resolve the dispute since September of 2024.

116. Alternative dispute resolution processes have been unsuccessful and

cannot provide the declaratory and injunctive relief necessary to prevent ongoing substantial harm inflicted by Defendant against Plaintiff or other similarly situated borrowers.

117. Plaintiff believes that Defendant's extensive pattern of deceptive acts against borrowers such as the Plaintiff, are mostly hidden and not available on public record.

118. Defendant's business profits are seemingly dependent on the unconscionable acts and practices described in this Complaint, and its targeting of nonprime borrowers of a certain group or class.

119. Plaintiff could not avoid the harm inflicted by Defendant because the harm resulted principally from actions which Defendant is solely responsible for and transactions to which the Plaintiff had not consented.

120. Furthermore, Plaintiff has performed all necessary duties to satisfy the debt related to the secured loan offered to Plaintiff by the Defendant, even in the absence of a conscionable, enforceable agreement contract signed by Plaintiff and Defendant.

WHEREFORE, for the convenience of parties and witnesses and in the interest of justice, Plaintiff respectfully brings this Action to this Honorable Court for entitled relief and judgement.

## COUNT I - BREACH OF FIDUCIARY DUTY

121. Plaintiff incorporates by reference paragraphs 1 through 120 as if fully set forth herein.

122. Defendant's actions as described above demonstrate a failure to perform necessary duties in a professional fiduciary capacity.

123. Defendant breached its fiduciary duty and failed to exercise reasonable care with regard to the Plaintiff, and negotiable instruments delivered to

Defendant, during and since the incidents which took place on or about May 10, 2024, August 1, 2024, September 19, 2024, September 23, 2024, and December 28, 2024.

124. As a direct and proximate result of Defendant's willful and negligent actions, Plaintiff has suffered and continues to suffer substantial losses, including denial of credit lines, loss of past and future earnings, deferred compensation, economic duress, loss of opportunity and other financial entitlements.

125. Plaintiff has suffered and continues to suffer severe and lasting effects.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $50,000, including compensatory damages, punitive damages, treble damages, pecuniary damages, special damages, and such other relief as this Court deems just and proper.

## COUNT II – PROFESSIONAL NEGLIGENCE

126. Plaintiff incorporates by reference paragraphs 1 through 125 as if fully set forth herein.

127. Defendant's actions outline its failure to use reasonable care by mishandling funds received by Plaintiff on August 1, 2024 and by dishonoring a negotiable instrument Defendant accepted in the amount of $8,400.00.

128. Defendant mismanaged those funds presented via negotiable instruments and debit transactions which fully satisfied the secured loan debt, resulting in Defendant's Professional Negligence detailed in preceding paragraphs.

129. As a direct and proximate result of Defendant's negligent actions,

Plaintiff has suffered and continues to suffer substantial losses, including denial of credit lines, loss of past and future earnings, deferred compensation, loss of opportunity and other financial benefits.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $50,000, including compensatory damages, consequential damages, punitive damages, injunctive relief and such other relief as this Court deems just and proper.

## COUNT III – WRONGFUL FAILURE TO PERFORM AND FAILURE TO HONOR A LOAN COMMITMENT

130. Plaintiff incorporates by reference paragraphs 1 through 129 as if fully set forth herein.

131. Defendant promised to extinguish secured loan debt as agreed, once payment was presented by Plaintiff in the manner requested by Defendant.

132. Defendant breached their obligations to Plaintiff by failing to perform in accordance to the law, responsibilities, policies, promises, and obligations related to the secured loan and its agreement presented to Plaintiff.

133. As a direct and proximate result of Defendant's negligent actions, Plaintiff has suffered and continues to suffer substantial losses, including denial of credit lines, loss of past and future earnings, deferred compensation, loss of opportunity and other financial benefits.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $50,000, including actual damages, compensatory damages, consequential damages, and such other relief as this Court deems just and proper.

## COUNT IV – FRAUD AND MISREPRESENTATION

134. Plaintiff incorporates by reference paragraphs 1 through 133 as if fully set forth herein.

135. Defendant's documented acts of misrepresentation of fraud are clearly demonstrated in this Action.

136. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting effects.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $50,000, including actual damages, compensatory damages, consequential damages, punitive damages, injunctive relief and such other relief as this Court deems just and proper.

## COUNT V - HARASSMENT

137. Plaintiff incorporates by reference paragraphs 1 through 136 as if fully set forth herein.

138. Defendant has willfully and repeatedly violated a cease-and-desist notice sent by certified mail on December 28th, 2024 and continues to harass Plaintiff since August of 2024, when this secured loan was fully paid.

139. Defendant has admitted to conducting these violations in their response to Plaintiff's complaints to the CFPB and OAG, referenced in EXHIBIT S

140. Defendant's unauthorized contacts of Plaintiff exceed 26 times, entitle damages pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §227 and per 15 U.S.C. § 1692d.

141. As a further direct and proximate result of Defendant's harmful actions, Plaintiff has suffered and continues to suffer severe and lasting effects, including emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $39,000, including compensatory damages, consequential damages, pecuniary damages, treble damages, punitive damages, injunctive relief and such other relief as this Court deems just and proper.

## COUNT VI – WRONGFUL INTERFERENCE AND PUBLICATION

142. Plaintiff incorporates by reference paragraphs 1 through 141 as if fully set forth herein.

143. Defendant admitted to conducting unauthorized contact with Plaintiff's banking institution, as detailed in "EXHIBIT S".

144. Defendant's false and misleading statements to third parties including Plaintiff's banking institution, and credit bureau have Wrongfully Interfered with the Plaintiff and his business relationships.

145. Harm has resulted after Defendant's unauthorized contact with the Plaintiff's banking institution and making false statements which have caused substantial injury to Plaintiff's reputation. Plaintiff's bank has subsequently threatened to increase expenses, premiums and induce additional insurance coverage on Plaintiff's account as a result.

146. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, and anguish, which have caused injury to his relationships with third parties, injury to his earning capacity and access to credit.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $50,000, including compensatory damages, punitive damages, injunctive relief and such other relief as this Court deems just and proper.

## COUNT VII– SLANDER OF CREDIT

147. Plaintiff incorporates by reference paragraphs 1 through 146 as if fully set forth herein.

148. 15 U.S.C. Chapter 41, Subchapter III, provides legal remedies for consumers who are harmed by negligent or willful noncompliance, including providing false or misleading information in a consumer report.

149. Defendant's actions caused substantial injury to the Plaintiff as a consumer who performed all necessary obligations to Defendant and had progressively improving credit until the harm inflicted by Defendant.

150. The Defendant's actions of repeatedly entering false information on records of Plaintiff's credit profile after notice of dispute, caused actual harm to Plaintiff as detailed in this Action.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $50,000, including statutory damages, compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

## COUNT VIII - RACKETEERING

151. Plaintiff incorporates by reference paragraphs 1 through 150 as if fully set forth herein.

152. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer severe and lasting effects, including economic duress.

WHEREFORE, Plaintiff demands judgment against Defendant, in the amount of $30,000, including actual damages, statutory damages, compensatory damages, punitive damages, injunctive relief and such other relief as this Court deems just and proper.

## COUNT IX – DECLARATORY JUDGEMENT

153. Plaintiff incorporates by reference paragraphs 1 through 152 as if fully set forth herein.

WHEREFORE, based on the allegations in all of the preceding paragraphs, Plaintiff requests this Honorable Court to declare:

I.    Defendant's loan agreement, including its terms, conditions, exhibit procedural and substantive unconscionability.

II.   Plaintiff did not sign the loan agreement identified as "EXHIBIT A".

III.  No terms or conditions in the Defendant's loan agreement or electronic consent agreement are enforceable against Plaintiff.

IV.   Plaintiff is held harmless, especially regarding the negotiable instruments presented to Defendant at place of payment on August 1, 2024.

V.    Plaintiff has no obligation to perform for or make payment to Defendant.

VI.   Any debt owed to Defendant by Plaintiff is satisfied and unenforceable.

VII.  Any entries on Plaintiff's credit profile by Defendant shall be corrected and/or deleted in accordance with FCRA.

VIII. Defendant must correct and/or delete any false or misleading statements or terms related to the factual allegations in this Action.

IX.   And such other declaration as this Court deems just and proper.

23

**TOTAL DAMAGES SOUGHT**

Plaintiff seeks total damages in the amount of $369,000 (Three Hundred Sixty Nine Thousand Dollars) for all claims asserted herein.

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Shoukry Fauntleroy, demands a jury trial in this case.

**VERIFICATION**

I, Shoukry Fauntleroy, verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief and that I expect to be able to prove the same at a hearing held in this matter. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904.

Executed on September 2, 2025

Respectfully submitted,

By: _Shoukry Fauntleroy_
Shoukry Fauntleroy, Plaintiff, Pro Se
276 Powderhorn Road
Henryville, Pennsylvania

_Lordina A Davies_ 9/2/2025

Commonwealth of Pennsylvania - Notary Seal
LORDINA A DAVIES - Notary Public
Monroe County
My Commission Expires October 21, 2028
Commission Number 1448087

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of September 2025, Plaintiff Shoukry Fauntleroy's Verified Complaint was filed using the U.S. Court Eastern District of Pennsylvania's Electronic Document Submission (EDS) system and served via U.S. First Class Mail, upon the following parties or their representatives:

OneMain Financial

RE: Account # 466810083874

156 Eagles Glen Plz., Ste. 101

East Stroudsburg, PA 18301

*Defendant OneMain Financial's principal place of business*

CT Corporation System

RE: NMLS ID: 931153 / License/Registration #: 40218

600 N 2nd Street, Suite 401

Harrisburg, PA 17101

*Registered Agent for Defendant OneMain Financial*

OneMain Financial, Legal Department

RE: Account # 466810083874

100 International Drive, 16th Floor

Baltimore, MD 21202

*Defendant OneMain Financial's Legal Department*

_____/s/ Shoukry Fauntleroy_____

Shoukry Fauntleroy, Plaintiff, Pro Se

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHOUKRY FAUNTLEROY,<br>Plaintiff, Pro Se,<br>v.<br>ONEMAIN FINANCIAL,<br>Defendant. | **EXHIBIT LIST** |

| EXHIBIT # | DESCRIPTION | OFFERED | OBJECTED | ADMITTED |
|---|---|---|---|---|
| A | Copy of Defendant's digital loan agreement | | | |
| B | Loan payoff inquiry email in July 2024 | | | |
| C | Billing statement for July 2024 reflecting payment | | | |
| D | Plaintiff's bank statement reflecting payments extinguishing total debt | | | |
| E | Release of lien document furnished by Defendant after loan was paid off | | | |
| F | Clean vehicle title from PennDOT | | | |
| G | Defendant statement of affiliation | | | |
| H | September billing statement | | | |
| I | Email from defendant on 9/23/2024 | | | |
| J | Credit Karma app screenshots | | | |
| K | Most recent billing statement | | | |
| L | OneMain account website dashboard screenshots | | | |
| M | Email from Defendant with false information. | | | |
| N | Cease-and-desist and dispute notices sent via certified mail to Defendant | | | |
| O | Credit denials from Lending Tree | | | |
| P | Credit denial from DefendantOneMain | | | |
| Q | Denial for student loans | | | |
| R | Apple credit denial | | | |
| S | OneMain response to CFPB/OAG complaints | | | |

# EXHIBIT A
Copy of Defendant's loan agreement

**LOAN AGREEMENT AND DISCLOSURE STATEMENT**                    **OneMain Financial.**

| DATE 05/10/24 | ACCOUNT NUMBER 10083874 | TYPE OF LOAN (Alpha) H00 | DATE FINANCE CHARGE BEGINS TO ACCRUE 05/13/24 |
|---|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | BORROWER(S) NAME AND ADDRESS ("I","We") |
|---|---|
| ONEMAIN FINANCIAL GROUP, LLC<br>156 EAGLES GLEN PLZ STE 101<br>EAST STROUDSBURG, PA 18301-1351        570-476-5330 | SHOUKRY FAUNTLEROY<br>276 POWDERHORN RD<br>HENRYVILLE, PA 18332 |

I have carefully read this entire Loan Agreement And Disclosure Statement and all related documents which include the Optional Products Disclosure Summary, Truth In Lending Insurance Disclosure and, if applicable, Personal Property Appraisal Form and GAP Waiver Addendum, all of which collectively constitute the "Agreement." This Loan Agreement and Disclosure Statement is divided into four sections: **A. Truth In Lending Disclosures; B. Loan Terms And Conditions; C. Arbitration Agreement And Waiver Of Jury Trial and D. Entire Agreement/Notices/Signature.** If I had any questions, I asked them before I signed these documents. By signing, I indicate my agreement to the statements, promises, terms, and conditions contained in the Agreement.

## A. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 22.25% | $ 8535.78 | $ 12800.00 | $ 21335.78 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 370.72 | 06/15/24 |
| 59 | $ 355.34 | monthly beginning 07/15/24 |

LATE CHARGE: [X] If any payment is not paid in full within 10 days after its due date, I will be charged 1.50 % of the unpaid amount of the payment, but not more than $N/A or less than $ 1.00.

[ ] If any payment is not paid in full within ____ days after its due date, I will be charged $_____ if the entire scheduled payment exceeds $_____ or $_____ if the entire scheduled payment is $_____ or less.

PREPAYMENT: If I pay off early:  [ ] I may  [X] I will not  have to pay a penalty for prepaying all or part of a loan's principal balance.
                                  [X] I may  [ ] I will not  get a refund or credit of part of the finance charge for a prepayment in full. I will not receive a refund or credit for a partial prepayment.

SECURITY: I am giving Lender a security interest in:  [ ] Unsecured  [X] Motor Vehicles  [ ] Other Collateral

| Year | Make | Model | VIN/Serial No. |
|---|---|---|---|
| 2014 | FORD | TAURUS | 1FAHP2MK6EG182961 |

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf
| | | | |
|---|---|---|---|
| 1. | $ 100.00 | MV Certificate of Title Fee | Paid To GOVERNMENT AGENCY |
| 2. | $NONE | | Paid To |
| 3. | $NONE | | Paid To |
| 4. | $NONE | | Paid To |
| 5. | $NONE | | Paid To |
| 6. | $NONE | | Paid To |
| 7. | $NONE | | Paid To |
| 8. | $NONE | | Paid To |
| 9. | $NONE | | Paid To |
| 10. | $NONE | | Paid To |
| 11. | $ | | Paid To |
| 12. | $ | | Paid To |
| 13. | $ | | Paid To |
| 14. | $ | | Paid To |
| 15. | $ | | Paid To |
| 16. | $ | | Paid To |
| 17. | $ | | Paid To |
| 18. | $ | | Paid To |
| 19. | $ | | Paid To |
| 20. | $ | | Paid To |
| 21. | $ | | Paid To |
| 22. | $ | | Paid To |
| 23. | $ | | Paid To |
| 24. | $ | | Paid To |
| 25. | $NONE | | Total Paid on Prior Account(s) with Lender |

Amounts Paid to me
| | | |
|---|---|---|
| 26. | $ 12700.00 | Paid To SHOUKRY FAUNTLEROY |
| 27. | $ | Paid To |
| 28. | $ | Paid To |
| 29. | $ | Paid To |
| 30. | $ | Paid To |
| 31. | $ | Paid To |
| | $ 12800.00 | Amount Financed (Sum of lines 1 - 24, 26 - 31) |
| | $ 150.00 | Prepaid Finance Charges (itemized below) |

### PREPAID FINANCE CHARGES
| | | | |
|---|---|---|---|
| 1. | $ 150.00 | Service Charge | Paid To LENDER |
| 2. | $NONE | | Paid To |
| 3. | $NONE | | Paid To |
| 4. | $NONE | | Paid To |
| 5. | $NONE | | Paid To |
| 6. | $NONE | | Paid To |
| 7. | $NONE | | Paid To |
| 8. | $NONE | | Paid To |

## THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

E-SIGNED by SHOUKRY FAUNTLEROY
on 2024-05-10 21:04:28 GMT

_____                    _____
Borrower                                    Co-Borrower

**B. LOAN TERMS AND CONDITIONS**

**DATE OF LOAN.** 05/13/24 (the date the Finance Charge is scheduled to begin to accrue).

**PROMISE TO PAY.** For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the TRUTH IN LENDING DISCLOSURES, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full.

**SECURITY INTEREST.** To secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I hereby grant Lender a security interest under the Uniform Commercial Code or other applicable law in: (a) the property identified in the "Security" disclosure of the TRUTH IN LENDING DISCLOSURES, including a purchase money security interest if property is being purchased with the proceeds hereof; (b) any substitutions or replacements of that property; and (c) the proceeds and products of that property ((a), (b), and (c) collectively referred to as the "Collateral"). I also hereby grant Lender a security interest in any unearned premiums from any credit insurance I have elected and purchased through Lender in connection with this transaction and any Required Insurance which protects the Collateral. Lender's security interest shall remain in effect, and subject to any modifications, renewals, extensions, and future advances thereof, until I have paid in full all amounts due under this Agreement. Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a non-purchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. I authorize Lender to sign and file financing statements covering the Collateral without my signature. I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. Unless prohibited by law I agree to pay the recording costs of your filing a financing statement, continuation statement and for releasing the security interest upon my payment in full.

**JOINT BORROWERS.** If more than one Borrower is named above, all Borrowers agree that we are jointly and severally liable and that Lender may enforce this Agreement against all or any of us, but not in a combined amount exceeding the amount due.

Each of us under this Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Collateral securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Except as otherwise required by law, Lender does not have to notify Borrower before instituting suit against another Borrower if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

**CO-MAKERS (also referred to as CO-SIGNER(S)).** If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s). I agree that Lender may pursue me or any Co-Maker if this Agreement is in default. Unless required by law, Lender will not notify me if: (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Co-Maker(s).

**AUTHORIZATION TO USE CREDIT REPORT.** By signing this Agreement, I authorize Lender to obtain, review and use information contained in my credit report in order to determine whether I may qualify for other products and services marketed by Lender. This authorization terminates when my outstanding balance due under this Agreement is paid in full. I may cancel such authorization at any time by writing the following: OneMain, P.O. Box 142, Evansville, IN 47701-0142. In order to process my request, Lender must be provided my full name, address, and account number.

**VOLUNTARY CREDIT INSURANCE.** As used in this Agreement, the term "credit insurance" includes credit life insurance, credit disability insurance, credit involuntary unemployment insurance, and credit property insurance. An affiliate of the Lender may provide the credit insurance that I voluntarily select. I acknowledge that Lender and/or its affiliates may profit from my purchase of voluntary credit insurance.

**REQUIRED INSURANCE.** I am required to maintain insurance in types, amounts, terms and deductible levels acceptable to Lender ("Required Insurance"). The Required Insurance must keep the Collateral insured against hazards for which Lender requires insurance. Such coverage includes, but is not limited to, loss by theft, vandalism, collision, fire, and any other risks of loss that would either impair Lender's interest in the Collateral or adversely affect the value of the Collateral. I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy obtained and paid for by me. I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender. Lender may not decline to accept any insurance provided by me unless it is for reasonable cause. Examples of reasonable cause include, but are not limited to, the financial condition of the insurer and the amount or type of coverage chosen. My choice of insurer will not otherwise affect Lender's credit decision or my credit terms. The types, amounts, and deductible levels that Lender requires under this Agreement may change during the term of the Agreement. Required Insurance must: (a) include a lender's loss payable provision; (b) name Lender, its successors and/or assigns, as loss payee; (c) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee; and (d) not include any disclaimer of the insurer's liability for failure to give such notice. I shall promptly give to Lender satisfactory proof (in Lender's reasonable estimation) of all Required Insurance and all receipts of paid premiums and renewal notices.

I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement or the security instrument are paid in full, my account is terminated, and Lender releases or discharges its security interest. In case of damage to or loss of the Collateral, I agree to give prompt notice to Lender and the insurance carrier. If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf.

If I do not keep Required Insurance under this Agreement in force at all times Lender may, but is not required to, in Lender's sole discretion, and at my expense, obtain insurance coverage to protect Lender's interest in the Collateral. I understand and agree that:

  A. Lender is under no obligation to obtain any particular type or amount of coverage.

  B. Lender-obtained insurance may, but need not, protect my interests.

  C. Lender-obtained insurance may, but need not, pay any claim I make.

  D. the cost of Lender-obtained insurance may be much more than the cost of insurance I could have obtained on my own.

  E. any amounts disbursed by Lender under this Section to obtain insurance shall become additional debt of mine under this Agreement, secured by this Agreement or the Security Instrument. This additional debt will be payable upon notice from Lender to me requesting payment.

  F. I am hereby authorizing Lender to release to, or obtain from, third parties any information necessary to monitor the status of Required Insurance.

  G. Lender-obtained insurance may be purchased from an affiliate of Lender.

  H. Lender, or its affiliate, may earn a profit by obtaining this insurance, to the extent permitted by applicable law.

  I. Lender may, at any time and at its sole option, cancel Lender-obtained insurance.

  J. Lender has a security interest in any unearned premiums from such insurance;

    1. I am hereby absolutely assigning to Lender any rights I may have to unearned Lender-obtained insurance premiums; and

    2. I am hereby authorizing and appointing Lender to be my attorney-in-fact for the purpose of cancelling the Lender-obtained insurance and applying the unearned premiums to reduce the account balance upon cancellation of said insurance.

**ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.** Where allowed by law, I hereby absolutely assign to Lender my rights to any Required Insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, and any other rights under policies covering the Collateral up to, but not in excess of the Total Balance due under this Agreement or security instrument. I agree that Lender may use any insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, to reduce the amounts that I owe under this Agreement or the security instrument, whether or not they are due. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds or unearned premium refunds paid to Lender do not satisfy all amounts that I owe Lender under this Agreement or the security instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the security instrument.

**CORRECTION; RELEASE.** During the term of this Agreement, I agree to cooperate with Lender to: (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release, or cause to be released, all liens upon payment in full.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

Initials    N/A     N/A
(Initials required for physical form)

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** Other than the class action waiver described in subsection G of section C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL, the fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any third party without the express written consent of Lender.

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, Lender may consider you to be in default of this Agreement if any one or more of the following occurs:

 A. I fail to make any payment, including, but not limited to the Total Amount Due, under this Agreement within 30 days of the payment due date.

 B. I fail to do anything else I have agreed to do in this Agreement.

 C. Any statement or representation I made in my credit application is untrue or incorrect.

 D. I fail to provide Lender with proof of residence or Required Insurance within ten (10) business days after Lender's written request for this information.

 E. I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.

 F. Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.

 G. Any police or governmental agency seizes or impounds the Collateral or starts forfeiture proceedings against the Collateral.

 H. I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

**(For Kansas residents only:** Lender believes the foregoing events B. through J. would significantly impair the prospect of payment, performance, or realization of collateral. The burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default of this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

 A. Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue interest from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.

 B. Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges at the Contract Rate from the date paid until repaid in full to Lender.

 C. Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.

 D. Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses before all other amounts due hereunder.

 E. Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.

 F. Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.

 G. Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing any one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights hereunder are cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral taken into possession as provided above.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement which, if mailed, will be sent to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the remaining unpaid balance that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

---

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods or services from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement: **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

Initials   N/A    N/A
(Initials required for physical form)

Account Number 10083874

☐ **INTEREST BEARING LOAN.** If checked, I agree to pay to the order of Lender, Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the Payment amounts shown in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. All payments will be applied in the following order: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest accrued to the date the payment is received and applied by Lender; and (c) if there is any remainder of the payment, the unpaid Principal balance. Interest on my loan accrues daily on the unpaid Principal balance. If I pay early, more of my payment will be applied to the unpaid Principal balance. If I pay late or miss payments, more of my payment will be applied to interest. This will delay my Principal reduction and cost me more in interest. The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by the Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full, to the extent permitted by applicable law. Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☒ **PRECOMPUTED LOAN.** I agree to pay the Total of Payments in the amounts and on the dates shown in the Payment Schedule in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus any other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. I agree to pay interest on any late charges and any amounts advanced by Lender to purchase Required Insurance that remain unpaid after my final scheduled payment due date, computed at the Contract Rate, until paid in full. All payments will be applied in the following order: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; and (b) the Total of Payments amount. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the rate of 1.5% per month, until paid in full.

**EXTENDED FIRST PAYMENT DUE DATE CHARGE.** $_____15.38__. If an amount is disclosed, I have requested an extended first payment due date and agree to pay the disclosed charge.

**PREPAYMENT.** I may prepay all or any part of my loan at any time. The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

If my loan is a precomputed loan, and I prepay this loan in full, the amount I owe will be reduced by any unearned finance charges, computed by (a) if the term of this Agreement is sixty-one (61) months or less, the Rule of 78s method, as provided by the Pennsylvania Consumer Discount Company Act, or (b) if the term of this Agreement is more than sixty-one (61) months, the actuarial method. No refund of less than $1.00 will be made.

**LATE CHARGE.** I agree to pay any late charge described in the TRUTH IN LENDING DISCLOSURES herein.

**DEFERMENT CHARGE.** If my loan is a precomputed loan and I fail to make a payment with 10 days of its due date and I request a deferment of one or more payments, Lender may at its sole option defer the due dates of all remaining scheduled payments, and I agree to pay a deferment charge of the greater of $1.00 or 1.5% per month of the amount deferred for the period of deferment. No default charge on the deferred payment may be collected in addition to the deferment fee unless a subsequent delinquency occurs in the payment deferred.

**DISHONORED CHECK CHARGE.** If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $50.00.

**DEFAULT COSTS.** In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

**GOVERNING LAW.** This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania and Federal law.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

PAAD81 (11-07-21) C.E. Agreement (Consumer Discount)          Page 4

Initials ___N/A___  ___N/A___
(Initials required for physical form)

## C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties that is more informal than a lawsuit in court. In arbitration, both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury. Arbitration allows for more limited discovery than in court, and an arbitrator's rulings are subject to limited review by courts. Arbitration takes place on an individual basis; class proceedings are not permitted. **UNDER THIS ARBITRATION AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION TO THE FULLEST EXTENT PERMITTED BY LAW.**

**1. CLAIMS AND DISPUTES COVERED.** Except as specified in this Arbitration Agreement, Lender and I agree that either party may elect arbitration of any Covered Claim. The term "Covered Claim" is intended to be broadly interpreted and includes the following claims or disputes, whether based in contract, tort, statute, equity, or any other legal theory:

- claims arising out of or relating to **any aspect of the relationship** between Lender and me, including, but not limited to, this Agreement or loan; any previous credit agreement ("Retail Contract") assigned to Lender; or any previous loan from or assigned to Lender;

- claims arising out of or relating to any documents, disclosures, advertising, or actions or omissions, including any allegation of fraud or misrepresentation, relating to this or any previous loan or Retail Contract made by or assigned to Lender or to any other of Lender's products or services;

- claims arising out of or relating to negotiations, performance, or breach of this or any previous loan or Retail Contract made by or assigned to Lender;

- claims arising out of or relating to the closing, servicing, collecting, or enforceability of any transaction involving Lender or me;

- claims arising out of or relating to any insurance product, service contract, membership plan, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender;

- claims arising out of or relating to communications by or on behalf of Lender, including claims under the Telephone Consumer Protection Act, do-not-call regulations, or similar laws or any other claim involving emails, faxes, text messages, or calls placed using automated technology or an artificial or prerecorded voice, including communications relating to offers of unrelated products or services; and

- claims arising out of or relating to the collection, retention, protection, use, disclosure, or transfer of any information about me or my accounts for any of Lender's products or services.

A Covered Claim is subject to arbitration regardless of when it arose, whether it is before the date of this or any prior Agreement between Lender and me (such as claims relating to advertising or disclosures or claims involving predecessors), or whether the claim arises after the termination of this Agreement. This Arbitration Agreement shall survive the termination of any loan or Retail Contract between Lender and me. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

**2. COVERED CLAIMS BY OR AGAINST THIRD PARTIES.** This Arbitration Agreement also covers claims brought by or against my and Lender's Third Parties. My Third Parties consist of any co-owners of my account, any authorized or unauthorized users or beneficiaries of my account or the loan, and each of their persons' assignees, heirs, trustees, agents, or other representatives. The Lender's Third Parties consist of Lender's employees, officers, agents, or directors; Lender's affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender; any third parties that assigned Retail Contracts or other agreements to Lender; any third party that provides me any product or service which I purchased with the assistance or involvement of Lender; any third party that participates in efforts to collect a debt owed under or to repossess collateral pursuant to this or any other Agreement or loan issued by or assigned to Lender; any other third party providing services to or contracting with Lender or any of Lender's Third Parties; and any of the employees, officers, agents, directors, affiliates, predecessors, successors, or assigns of such third parties. Affiliate corporations are Lender's past, present, and future parent corporations, subsidiary corporations, and sister corporations, including each of those corporation's predecessors, successors, and assigns. Lender's affiliates include but are not limited to OneMain Consumer Loan, Inc., iLoan, OneMain Home Equity, Inc., OneMain Financial Services, Inc., and Yosemite Insurance Company.

**3. MATTERS NOT COVERED BY ARBITRATION.** All claims for damages must be arbitrated, but I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin or foreclosure, but instead may proceed in court for those judicial remedies. I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counterclaim for rescission of damages I may have arising out of, relating to, or in connection with Lender's exercise of these remedies must be arbitrated. In addition, instead of pursuing arbitration, either Lender or I also have the option to bring an individual lawsuit in small claims or equivalent court, so long as the action remains in that court and is not removed or appealed to a court of general jurisdiction. If these limitations on removal or appeal of small claims court actions are unenforceable, the dispute instead shall be arbitrated. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin or foreclosure or previously filing different claims in small claims court. In addition, disputes over a claim or whether a dispute can or must be arbitrated, including disputes over the validity and enforceability of this Arbitration Agreement or whether sections 5, 10, or 12 of this Arbitration Agreement have been violated, are for a court to decide. Nothing in this Arbitration Agreement precludes me from bringing issues to the attention of federal, state, or local agencies or law enforcement. Such agencies can, if the law allows, seek relief against Lender on my behalf.

**4. PRE-ARBITRATION NOTICE OF DISPUTE AND INFORMAL RESOLUTION.** A party who intends to seek arbitration must first send to the other party a written Notice of Dispute ("Notice"). The Notice to Lender may be sent by U.S. mail or professional courier service addressed to OneMain Financial, Legal Department, 100 International Drive, 16th Floor Baltimore, MD 21202 ("Notice Address"). The Notice to me may be sent to the address on file with my account. The Notice must include all of the following information: (a) my name; (b) my account number; (c) a description of the nature and basis of the claim or dispute; (d) an explanation of the specific relief sought and the basis for the calculations; (e) the signature of the party sending the Notice; and (f) if I am sending the Notice and have retained an attorney, my signed statement authorizing Lender to disclose my confidential account records to my attorney if necessary in resolving my claim.

After the Notice containing all of the information required above is received, within 60 days either party may request a conference to discuss informal resolution of the dispute ("Informal Settlement Conference"). If timely requested, the Informal Settlement Conference will take place at a mutually agreeable time by telephone or videoconference, I and a Lender representative must both personally participate in a good-faith effort to resolve the dispute informally without the need to proceed with arbitration. Any counsel representing Lender or me also may participate. The requirement of personal participation in an Informal Settlement Conference may be waived only if both Lender and I agree in writing.

Any applicable statute of limitations for the claims and relief set forth in a Notice will be tolled during the period between the date that a Notice is received by the other party and the later of (i) 60 days after receipt of the Notice; or (ii) if an Informal Settlement Conference is timely requested, seven days after the request is withdrawn or the Informal Settlement Conference is completed (the "Informal Resolution Period").

**5. COMMENCING ARBITRATION.** An arbitration proceeding may be commenced by filing a demand for arbitration with the American Arbitration Association ("AAA") only if Lender and I do not reach an agreement to resolve the claim during the Informal Resolution Period. (If your Notice is part of a mass arbitration, section 10 contains additional requirements for commencing arbitration.) A court will have authority to enforce this section 5, including the power to enjoin the filing or prosecution of arbitrations without first providing a fully complete Notice and participating in a timely requested Informal Settlement Conference. Unless prohibited by applicable law, the arbitration provider shall not accept or administer any arbitration unless the claimant has complied with the Notice and Informal Settlement Conference requirements of section 4.

**6. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the Consumer Arbitration Rules ("AAA Rules") of the AAA in effect at the time arbitration is started, as modified by this arbitration provision, and will be administered by the AAA. (If the AAA is not available or unwilling to administer arbitrations consistent with this Arbitration Agreement or you object to the AAA for good cause, another arbitration provider shall be selected by the parties or, if the parties cannot agree on a provider, by the court.) The AAA Rules are available online at https://www.adr.org/consumer or by writing to the Notice Address.

**7. SELECTION OF ARBITRATOR.** The AAA maintains lists of approved arbitrators. The AAA will provide Lender and me each a list of seven possible arbitrators. Lender and I will each have an opportunity to strike three persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator. The arbitrator must be a lawyer with at least 10 years of experience or a retired judge.

### SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

Initials    N/A      N/A
(Initials required for physical form)



UXAE71(12-04-22) C.E. Agreement      Page 5      Account Number 10083874

**8. COSTS OF ARBITRATION.** The AAA charges certain fees in connection with arbitration proceedings. I may have to bear some of these fees; however, if I am not able to pay my share of those fees or think they are too high, Lender will consider any reasonable request to bear those fees, so long as I have fully complied with the requirements of sections 4, 5, and 10 for any arbitration I initiate. Lender will also bear any costs Lender is required to bear by law or by the terms of any other agreement with me.

**9. CONDUCT OF PROCEEDINGS.** All issues are for the arbitrator to decide, except as specified in this Arbitration Agreement. In resolving the parties' claims, the arbitrator shall apply all applicable substantive law and honor all privileges (such as the attorney-client privilege and attorney work product doctrine) recognized in law. The arbitrator may consider rulings in other arbitrations involving other claimants, but an arbitrator's ruling will not be binding in proceedings involving different claims. Except as specified in section 12 below, the arbitrator can award the same damages and relief that a court can award under applicable law. During the arbitration, the amount of any settlement offer made to or by you shall not be disclosed to the arbitrator until after the arbitrator determines the relief, if any, to which you are entitled. If you had fully complied with the Notice and Informal Settlement Conference requirements, did not disclose the amount of any settlement offers during the arbitration, and the arbitrator awards you more than was offered in the last written settlement offer to you before the arbitrator was selected, your recovery shall be $1,000 in lieu of any smaller award (the "Minimum Recovery"). In determining if an award is greater than the value of the last written settlement offer, the calculation should not include amounts offered or awarded for attorneys' fees and expenses. The arbitrator may resolve disputes and make rulings as to eligibility for and payment of the Minimum Recovery upon request from either party made within 14 days of the arbitrator's ruling on the merits.

**10. MASS FILINGS.** If 25 or more claimants submit Notices or file arbitrations raising similar claims and are represented by the same or coordinated counsel, all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved prior to arbitration as set forth in section 4. You agree to this process even though the arbitration of your claim might be delayed. In the first stage, the parties shall each select up to 10 cases per side (20 cases total) to be filed in arbitration and resolved individually in accordance with this arbitration agreement, with each case assigned to a separate arbitrator. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, administer, nor demand payment for AAA fees for arbitrations commenced in violation of this section 10. After the first stage of bellwether proceedings is complete, the parties shall engage in a single mediation of all remaining cases, and Lender will pay the mediation fee. If the parties are unable to resolve the remaining cases, the process of filing up to 20 cases in arbitration to be resolved individually by different arbitrators, followed by mediation, will be repeated. If any cases remain, the process will be repeated until all claims are resolved except that the total number of cases filed in arbitration each round shall increase to 50, and mediation is optional at the agreement of both sides. If these mass filing procedures apply to a claimant's Notice of Dispute, the Informal Resolution Period applicable to the claims and relief set forth in that Notice will be extended until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have the authority to enforce this section 10 and, if necessary, to enjoin the filing or prosecution of arbitrations or the assessment or collection of AAA fees. If, after exhaustion of all appeals, a court determines that the process in this section of staging the filing of cases in arbitration is unenforceable, then this section shall be severed and the cases may be filed in arbitration, but the Minimum Recovery in section 9 will be unavailable.

**11. ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims seeking or resulting in an award of $100,000 or more (including costs and attorneys' fees), any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the AAA. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision and award shall be subject to judicial review on the grounds set forth in the Federal Arbitration Act.

**12. REQUIREMENT OF INDIVIDUAL ARBITRATION.** The arbitration may award relief (including, but not limited to, damages, restitution, and declaratory and injunctive relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. Lender and I agree that each may bring claims against the other only in its or my individual capacity and not as a plaintiff or class member in any purported class, representative, or private attorney general proceeding. Further, unless both Lender and I agree otherwise, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a class, representative, or private attorney general proceeding. If, after exhaustion of all appeals, any of these prohibitions on non-individualized relief, class, representative, and private attorney general claims; and consolidation is found to be unenforceable as to a particular claim or with respect to a particular request for relief (such as a request for injunctive relief), then the parties agree that such a claim or request for relief shall be decided by a court after all other claims and requests for relief are arbitrated.

**13. FUTURE CHANGES TO ARBITRATION AGREEMENT.** Notwithstanding any provision in this Agreement to the contrary, Lender and I agree that if Lender makes any future change to this Arbitration Agreement (other than a change to the Notice Address), I may reject any such change by sending Lender written notice with 30 days of the change to the Notice Address. This is not a rejection of arbitration altogether. By rejecting any future change, I am agreeing that we will arbitrate any Covered Claim in accordance with this version of the Arbitration Agreement.

## D. ENTIRE AGREEMENT/NOTICES/SIGNATURE

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

> BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, AND TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, EXCEPT AS OTHERWISE PROVIDED IN THIS ARBITRATION AGREEMENT.
>
> UXARB2 (07-15-12)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of all of the documents comprising this Agreement, and the Privacy Notice and agree to be bound thereby.

**Consent to be Contacted by Telephone.** I expressly consent and agree that Lender may contact me at any telephone number that I provide Lender now or in the future, including a number for a cellular phone or other wireless device and a number that I later convert to a cellular phone or other wireless device. I understand that this consent means that I agree to receive voice calls using automatic telephone dialing systems, prerecorded or artificial voice messages and text messages by or on behalf of Lender for transactional purposes, such as the collection and servicing of my loan account with Lender.

**NOTICE TO CONSUMER: 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.**

x ___N/A_____          x _____ L.S.
Witness                                                     Borrower    SHOUKRY FAUNTLEROY
                                                              (E-SIGNED by SHOUKRY FAUNTLEROY on 2024-06-10 21:06:32 GMT)

x ___N/A_____          x _____ L.S.
Witness                                                     Co-Borrower

x _____ L.S.     x _____ L.S.
Co-Maker                                                  Co-Maker

Print Name: _____          Print Name: _____

# EXHIBIT B

Email from Defendant with loan payoff amount.

# OneMain Payoff Inquiry

From:   no_reply@onemainfinancial.com

To:   S.FAUNTLEROY@YAHOO.COM

Date:   Monday, July 8, 2024 at 06:38 AM EDT

---

## **OneMain** Financial.

---

### Thank you for being a valued customer!

**The payoff amount for your account, if paid by 07/18/24, is $13,390.07. Please let us know if we can help you in the future.**

### You could be eligible for a new personal loan and use the additional money as you wish*!

- **Consolidate debts**
- **Cover unexpected expenses**
- **Make a wedding special**
- **Improve your home and more**



**APPLY NOW**

Get a response in 10 minutes
when you apply online

Norton SECURED
powered by Symantec

| Visit Our Community | View Your Account | Visit a branch |
| --- | --- | --- |
| onemainfinancial.com | Privacy Policy | Disclosures |

Copyright © 1996-2019, OneMain Financial. All rights reserved.

*All loans subject to our normal credit policies. Assumes renewal or payoff of customer's OneMain loan.

Email Disclaimer

This E-mail contains confidential information belonging to the sender, which may be legally privileged information. This information is intended only for the use of the individual or entity addressed above. If you are not the intended recipient, or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the E-mail or attached files is strictly prohibited.

# EXHIBIT C

Billing statement detailing July payment.

ONEMAIN
156 EAGLES GLEN PLZ STE 101
EAST STROUDSBURG, PA  18301-1351

Account Number: 76083874
Statement Date: Jul 31, 2024
Contractual Monthly Payment: $355.34
Current Interest Rate: 21.68%
Maturity Date: May 15, 2029
**Payment must be received on or before:   Aug 15, 2024**

9-761-97539-0164672-001-000-000-000-000

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332-7154

| Item Description | Amount |
|---|---|
| **Account Summary** | |
| Current Amount Due | $355.06 |
| Past Due Amount | $0.00 |
| Past Due Charges | $0.00 |
| **Total Amount Due** | **$355.06** |

If you cannot make your payment on or before the due date please contact the branch listed on your statement.

Please refer questions or requests for money by calling (570) 476-5330. You may also contact us at www.onemainfinancial.com or the address above. Please include your name and account number on any correspondence.

### Activity Since Last Statement

| Account Summary | Date | Amount | Late Fees | Other Fees | Applied to Balance | Balance is not payoff amount, call us for payoff amount. Balance |
|---|---|---|---|---|---|---|
| **Previous Balance .......** | | | | | | **$20,964.78** |
| Payment - Thank You | Jul 18, 2024 | $355.34 | | | $355.34 | $20,609.44 |

*Your loan is currently paid ahead of schedule. Although only a partial amount is due this month, we encourage you to make your regular monthly payment of $355.34. if you continue to pay ahead of schedule, you may pay off your loan early and be entitled to a refund of a portion of the finance charges calculated when your loan was made.*



**Need additional cash? Just check the box on the portion below and return with your payment. We'll call as soon as we receive your request. Or call our office today at (570) 476-5330 to apply.**

Page 1 of 2          All loans are subject to normal credit policy.

---

*Retain this portion for your records*

*Please detach and  return this portion with your payment*
*Please stop by our office or use the enclosed envelope to return your payment to the address below.*
CHECK HERE FOR SPECIAL PAYMENT APPLICATION AND/OR ADDRESS CORRECTION ON BACK.

ONEMAIN
156 EAGLES GLEN PLZ STE 101
EAST STROUDSBURG, PA  18301-1351


**OneMain**
Financial.

| Account Number: | 466810083874 | |
|---|---|---|
| | | Due on or before |
| On Time Payment: | $355.06 | Aug 15, 2024 |
| | | Pay after |
| Late Payment: | $358.96 | Aug 25, 2024 |
| Enclosed is my payment for | $ | |
| Yes, I would like additional cash. | | |

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332-7154

ONEMAIN
P.O. BOX 740594
CINCINNATI OH  45274-0594

ELECTRONIC STATEMENT REPRINT

information listed on your statement. If you dispute any information in this letter after you receive it, you may dispute directly through the applicable credit reporting agency or send in writing to OneMain, P.O. Box 3327, Evansville, IN 47732-3327, Fax: (800) 617-9932. Additional information can be found at www.omf.com.

**Negative Information Notice -** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

## PAYMENT OPTIONS

- Send check or money order via U.S. Mail or Overnight Mail to the payment address on the front of the billing coupon. **Checks received after 5:00 p.m. local time at the payment address on the front of the billing coupon will be credited as of the next business day.**
- If you have authorized Direct Pay or other electronic payments, the amount we actually debit or charge may be lower if the scheduled payment is more than your payoff amount on the payment date

**CHECKS MAY BE PROCESSED AS ACH PAYMENTS:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your check, in some instances it may take longer based on processing times. You will not receive your check back from your financial institution.

- **Insufficient Funds**
  Payments returned for insufficient funds may be represented based on your financial institutions' guidelines. OneMain is not responsible for fees incurred from your financial institution as a result of representment. For inquiries, please call the number listed on the front of this statement.
- **Principal Only and Special Handling Payments**
  If you have a special payment, please send or bring your payment to the branch address listed at the top of the prior page of this statement. Special payments include payoff, deferments, post-dated checks, judgments, bankruptcy and principal-only payments. Principal-only payments are only available for interest-bearing accounts.
- **On-line Payments**
  With on-line bill pay service, you can make a monthly payment through our secure on-line payment process, available 24 hours a day and seven days a week. You will no longer have to write and mail a check to OneMain each month when using our on-line bill pay service. Simply go to our website at www.omf.com and click on "Make a Loan Payment" to begin the process.
- **DirectPay (If Available)**
  With DirectPay, our convenient payment service, you'll no longer have to write and mail a check to OneMain each month. The exact amount of your minimum monthly payment will be automatically transferred from your checking account to OneMain. Along with the postage you save, you'll have a greater peace of mind. Because, no matter where you are or what you're doing, you can be certain your payment will be on time, every time. Please contact your branch, listed on the prior page of this statement, to obtain an authorization form for this service.
- **Pay by Interactive Phone Service Terms -** Call us at 800-290-7002 to pay by interactive phone service. By using the interactive phone service and providing the last 4 digits of your social security number, you authorize OneMain to electronically debit your bank account and, if necessary, electronically credit your bank account to correct erroneous debits. OneMain reserves the right to terminate or change the terms of the interactive phone service at any time.
- Late charges and insufficient funds fees may be assessed as permitted by your Loan Agreement and state law. For more information regarding the timing and amounts of charges, please refer to your Loan Agreement.

## FOR CONSUMER FINANCE LOANS

**AZ:** Loans made by OneMain Financial Group, LLC 100 International Dr., 16th Floor,  Baltimore, MD 21202. Loans also serviced by OneMain Consumer Loan, Inc., 600 NW 2nd Street, Evansville, IN 47708  **CA:** Loans made and/or serviced pursuant to a California  Department of Financial Protection and Innovation Finance Lenders License. **MT:** Loans made and/or serviced by OneMain Consumer Loan, Inc., 600 NW 2nd Street, Evansville, IN 47708 or OneMain Financial Group, LLC 100 International Dr., 16th Floor, Baltimore, MD 21202.  **NJ:** Loans made and/or serviced by OneMain Consumer Loan, Inc., principal office: 600 NW 2nd Street, Evansville, IN 47708 or OneMain Mortgage Services, Inc., 601 NW 2nd Street, Evansville, IN 47708 or OneMain Financial Group, LLC 100 International Dr.,16th Floor, Baltimore, MD 21202, licensed by the NJ Department of Banking and Insurance. **NY:** Loans made by OneMain Financial Group, LLC Licensed Lender – NY State Department of Financial Services.  **You may file complaints about OneMain Mortgage Services, Inc. with the NY State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1(800) 342-3736 or by visiting the Department's website at www.dfs.ny.gov. OR:** Loans made/ and or serviced by OneMain Consumer Loan, Inc., OneMain Financial Group, LLC or OneMain Mortgage Services, Inc. **PA:** Loans made and/or serviced by OneMain Consumer Loan, Inc. or OneMain Financial Group, LLC, all licensed by the Pennsylvania Department of Banking and Securities. **RI:** Loans made and/or serviced by OneMain Consumer Loan, Inc. or OneMain Financial Group, LLC, Rhode Island Licensed Lender and Licensed Small Loan Lender and OneMain Mortgage Services, Inc., Rhode Island Licensed Lender. **TX:** Loans made by OneMain Financial Group, LLC, 100 International Dr., 16th Floor, Baltimore, MD 21202. **WA:** Loans made and/or serviced by OneMain Consumer Loan, Inc. (CL-937358); OneMain Financial Group, LLC (CL-1339418); or OneMain Mortgage Services, Inc. (CL-931153). **WV:** Loans in West Virginia are originated and/or serviced by OneMain Financial, Inc.

If you are not currently entitled to the protections of the United States Bankruptcy Code, then this communication is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose.

NOTICE: If you are currently entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the loan account which is the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT OR RECOVER ANY AMOUNTS OWED IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY. Any payments made on a loan which has been discharged in bankruptcy are voluntary.

### SPECIAL PAYMENT APPLICATION
IF YOU HAVE MULTIPLE ACCOUNTS and wish to apply your payment to more than one account, please complete the following.

Please apply:

$ _____ to _____
Account Number

$ _____ to _____
Account Number

### ADDRESS CORRECTIONS

Street Address

City, State                 Zip Code

Home Phone                  Business Phone

We appreciate your patronage and continually strive to provide quality service to our customers. We welcome the opportunity to be of service and encourage you to contact us if you have any questions concerning your account. To ensure the proper handling of your inquiry, please do not write on this coupon. Send your inquiry directly to the branch address listed at top of prior page of statement.

# EXHIBIT D

Plaintiff's bank statement reflecting all payments
made to Defendant to extinguish debt.

**Statement**

# NEPA Credit Union

337 Clay Avenue, Stroudsburg, PA 18360
570-421-5585 • nepafcu.org

| Account Number | Period Ending | Page |
|---|---|---|
| 0000█ | 08/01/24 - 08/31/24 | 1 of 3 |

## Account Summary

| | SHARE DRAFT | |
|---|---|---|

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332

## ▶ SHARE DRAFT (0█

| Starting Balance: | █ | YTD Dividends: | █ |
|---|---|---|---|
| Ending Balance: | █ | | |
| Deposits / Credits: | █ | | |
| Withdrawals / Debits: | █ | | |

## Transactions

| Date | Credits | Debits | Balance | Description |
|---|---|---|---|---|
| | | | | |
| 08/01 | 5,200.00 | | 8,446.08 | Deposit |
| 08/01 | | -8,400.00 | 46.08 | Withdrawal by Check *Check 00 450967 Disbursed 8,400.00* |
| 08/01 | 500.00 | | 546.08 | Deposit Debit Card |
| 08/01 | 1,000.00 | | 1,546.08 | Deposit Debit Card |
| 08/01 | 81.80 | | 1,627.88 | Deposit |
| 08/01 | | -1,500.00 | 127.88 | Withdrawal by Check *Check 00 450970 Disbursed 1,500.00* |
| 08/01 | 3,050.00 | | 3,177.88 | Deposit *INCOMING WIRE* |
| 08/02 | 200.00 | | 3,348.21 | Deposit Debit Card |
| 08/02 | | -634.73 | 2,713.48 | Withdrawal Bill Payment #669653 *PNM * OneMain Financia Santa Clara CA* |
| 08/02 | | -2,500.00 | 213.48 | Withdrawal Bill Payment #862496 *PNM * OneMain Financia Santa Clara CA* |

Statement

| Account Number | Period Ending | Page |
|---|---|---|
| 0000█ | 08/01/24 - 08/31/24 | 2 of 3 |

▶ SHARE DRAFT (0█    (continued)

**Transactions**



| Date | Credits | Debits | Balance | Description |
|---|---|---|---|---|

**Fee Summary:**

| | Month-to-Date | Year-to-Date |
|---|---|---|

Statement



| Account Number | Period Ending | Page |
|---|---|---|
| 0000 ████ | 08/01/24 - 08/31/24 | 3 of 3 |

337 Clay Avenue, Stroudsburg, PA 18360
570-421-5585 • nepafcu.org



**Interest Charge Calculation:** The balance used to calculate interest is the unpaid daily balance after all payments have been subtracted from the balance and all advances have been added to the balance.

▶ **Reporting Information for 2024:**

  

# EXHIBIT E

Release of lien document from Defendant, notarized with disqualifying interest.

**OneMain.** Financial

156 Eagles Glenn Plaza
East Stroudsburg, PA 18301

T 570-476-5330 F 570-476-5504

Date: 8/1/2024

Customer Name: SHOUKRY FAUNTLEROY
Address:       276 POWDERHORN RD
               HENRYVILLE PA 18332

RE:    Account # 10083874
       Release of Lien on Vehicle

In connection with the referenced Account, OneMain held a lien and security interest on the below Vehicle:

       Year:      2014
       Make:      FORD
       Model:     TAURUS
       VIN #:     1FAHP2MK6EG182961

This letter confirms that OneMain has released its lien on the vehicle and no longer has a security interest in the vehicle.

**This Release of Lien is effective for any lienholder on the referenced Vehicle title that is identified on the "OneMain Statement of Affiliation" attached hereto and incorporated by reference herein.**

Colorado: I certify, under penalty of perjury in the second degree as defined in C.R.S. 18-8-503, that the above information is true and correct to the best of my knowledge.

Please keep this letter for your records. If you have questions or require additional information, please call us at 570-476-5330         .

Sincerely,
OneMain

By: Shana Rodriguez
Printed Name:
Title:

STATE of _PA_           ; COUNTY of _Monroe_           :
This instrument was acknowledged before me on _8/1/24_ by _Shana Rodriguez_ as _HM_ of OneMain.

_____                    (Stamp)
(Signature of notarial officer)

Commonwealth of Pennsylvania - Notary Seal
SHANA RODRIGUEZ - Notary Public
Monroe County
My Commission Expires May 17, 2025
Commission Number 1395004

Auto Lien Release.072718.docx

# EXHIBIT F

Clean title of vehicle used as collateral for loan

# COMMONWEALTH OF PENNSYLVANIA
## CERTIFICATE OF TITLE FOR A VEHICLE

FUEL #GAS

242168047000222 001

87174605901 FA

| 1FAHP2MK6EG182961 | 2014 | FORD | | 87174605901 FA |
| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE OF VEHICLE | | TITLE NUMBER |

| SDN | 2 | | NJ | 08/03/24 | 115000 | 0 |
| BODY TYPE | DUP | SEAT CAP | PRIOR TITLE STATE | ODOM./PROCD. DATE | ODOM. MILES | ODOM. STATUS |

| 05/04/24 | 08/03/24 | | | | P |
| DATE PA TITLED | DATE OF ISSUE | UNLADEN WEIGHT | GVWR | GCWR | TITLE BRANDS |

**ODOMETER STATUS**
0 = ACTUAL MILEAGE
1 = MILEAGE EXCEEDS THE MECHANICAL LIMITS
2 = NOT THE ACTUAL MILEAGE
3 = NOT THE ACTUAL MILEAGE-ODOMETER TAMPERING VERIFIED
4 = EXEMPT FROM ODOMETER DISCLOSURE

**TITLE BRANDS**
A = ANTIQUE VEHICLE
C = CLASSIC VEHICLE
D = COLLECTIBLE VEHICLE
F = OUT OF COUNTRY
G = ORIGINALLY MFGD. FOR NON-U.S. DISTRIBUTION
H = AGRICULTURAL VEHICLE
L = LOGGING VEHICLE
P = IS/WAS A POLICE VEHICLE
R = RECONSTRUCTED
S = STREET ROD
T = RECOVERED THEFT VEHICLE
V = VEHICLE CONTAINS REISSUED VIN
W = FLOOD VEHICLE
X = IS/WAS A TAXI

REGISTERED OWNER(S)

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332

FIRST LIEN FAVOR OF:

SECOND LIEN FAVOR OF:

If a second lienholder is listed upon satisfaction of the first lien, the first lienholder must forward this Certificate of Title to the Bureau of Motor Vehicles with the appropriate form and fee.

FIRST LIEN RELEASED_____ DATE_____

BY_____
AUTHORIZED REPRESENTATIVE

MAILING ADDRESS

SECOND LIEN RELEASED _____
DATE_____

BY_____
AUTHORIZED REPRESENTATIVE

000000
SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332

**pennsylvania**
DEPARTMENT OF TRANSPORTATION

I certify as of the date of issue, the official records of the Pennsylvania Department of Transportation reflect that the person(s) or company named herein is the lawful owner of the said vehicle.

MICHAEL B. CARROLL
Secretary of Transportation

## D. APPLICATION FOR TITLE AND LIEN INFORMATION

TO BE COMPLETED BY PURCHASER WHEN VEHICLE IS SOLD AND THE APPROPRIATE SECTIONS ON THE REVERSE SIDE OF THIS DOCUMENT ARE COMPLETED.

SUBSCRIBED AND SWORN TO BEFORE ME

| MO | DAY | YEAR |

SIGNATURE OF PERSON ADMINISTERING OATH

SIGN IN PRESENCE OF A NOTARY

If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (on death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (on death of one owner, interest of deceased owner goes to his/her heirs or estate).

IF NO LIEN, CHECK ☐    IS THIS AN ELT? (IF YES, FIN REQUIRED)    YES ☐ NO.☐

1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER:

1ST LIENHOLDER NAME

STREET

CITY                         STATE              ZIP

IF NO 2ND LIEN, CHECK ☐  IS THIS AN ELT? (IF YES, FIN REQUIRED) YES ☐ NO.☐

2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER:

2ND LIENHOLDER NAME

STREET

CITY                         STATE              ZIP

# EXHIBIT G

Defendant OneMain Statement of Affiliation

# ONEMAIN STATEMENT OF AFFILIATION

The OneMain family of financial services companies operates through a number of legal entities, some of which have used d/b/a's, changed names, and/or merged over the years.  OneMain and its predecessors have also acquired loan portfolios from other creditors.  Consequently, OneMain security interests are held under many different lienholder names.  This Statement of Affiliation identifies the entities and corporate names through which One Main does or has done business or is an assignee of with authority to release.  **A Release of Lien under the name "OneMain" is effective for any lienholder name listed below, including said name without the entity designation "Inc" or "LLC":**

| | |
|---|---|
| American General | OneMain Financial of New York, Inc. |
| American General Auto Finance, Inc. | OneMain Financial of North Carolina, Inc. |
| American General Finance | OneMain Financial of Ohio, Inc. |
| American General Finance, Inc. | OneMain Financial of Pennsylvania, Inc. |
| American General Financial | OneMain Financial of South Carolina, Inc. |
| American General Financial Services, Inc. | OneMain Financial of Texas, Inc. |
| CitiFinancial Company | OneMain Financial of Washington, Inc. |
| CitiFinancial Consumer Services, Inc. | OneMain Financial of Wisconsin, Inc. |
| CitiFinancial Corporation | OneMain Financial of Wyoming, Inc. |
| CitiFinancial Corporation (CO) | OneMain Financial Services, Inc. |
| CitiFinancial Services, Inc. | OneMain Financial, Inc. |
| CitiFinancial Services, Inc. (GA) | OneMain Home Equity, Inc. |
| CitiFinancial Services, Inc. (MO) | OneMain Mortgage Services, Inc. |
| CitiFinancial Services, Inc. (OH) | Springleaf Auto Finance, Inc. |
| CitiFinancial Services, Inc. (TN) | Springleaf Consumer Loan, Inc. |
| CitiFinancial, Inc. | Springleaf Financial Services of Alabama, Inc. |
| CitiFinancial, Inc. (MD) | Springleaf Financial Services of America, Inc. |
| CitiFinancial, Inc. (MO) | Springleaf Financial Services of Arizona, Inc. |
| CitiFinancial, Inc. (TN) | Springleaf Financial Services of Florida, Inc. |
| CitiFinancial, Inc. (WV) | Springleaf Financial Services of Illinois, Inc. |
| CitiFinancial, Inc. NC | Springleaf Financial Services of Indiana, Inc. |
| Equity One, Inc. | Springleaf Financial Services of Louisiana, Inc. |
| OneMain | Springleaf Financial Services of New York, Inc. |
| OneMain Auto Finance, Inc. | Springleaf Financial Services of North Carolina, Inc. |
| OneMain Consumer Loan, Inc. | Springleaf Financial Services of Ohio, Inc. |
| OneMain Financial (HI), Inc. | Springleaf Financial Services of Pennsylvania, Inc. |
| OneMain Financial (WV), Inc. | Springleaf Financial Services of South Carolina, Inc. |
| OneMain Financial Group, LLC | Springleaf Financial Services of Texas, Inc. |
| OneMain Financial of Alabama, Inc. | Springleaf Financial Services of Washington, Inc. |
| OneMain Financial of Arizona, Inc. | Springleaf Financial Services of Wisconsin, Inc. |
| OneMain Financial of Florida, Inc. | Springleaf Financial Services of Wyoming, Inc. |
| OneMain Financial of Illinois, Inc. | Springleaf Financial Services, Inc. |
| OneMain Financial of Indiana, Inc. | Springleaf Financial Home Equity, Inc. |
| OneMain Financial of Louisiana, Inc. | Springleaf Financial Mortgage Services, Inc. |
| OneMain Financial of Minnesota, Inc. | Springleaf Financial Services - Springleaf, Inc. |

I am the Administrator of the OneMain Paid Out Processing Department.  My responsibilities include overseeing OneMain's centralized lien release processes.  This Statement of Affiliation may be relied upon as evidence of the relationships and authority identified herein.

Colorado:  I certify, under penalty of perjury in the second degree as defined in C.R.S. 18-8-503, that the above information is true and correct to the best of my knowledge.



Erick M. Castillo
OneMain Paid Out Processing Department

State of Indiana        )
County of Vanderburgh  )  ss:

This instrument was acknowledged before me on June 23, 2022 by Erick M. Castillo as Administrator of the OneMain Paid Out Processing Department.

_Anisia S Crawford_                    (Stamp)

(Signature of notarial officer)

ANISIA S. CRAWFORD
Notary Public, State of Indiana
Resident of Vanderburgh County, IN
My Commission Expires: June 17, 2023
Commission Number 669291

# EXHIBIT H

September 2025 billing statement from
Defendant.

**OneMain Financial.**

ONEMAIN
156 EAGLES GLEN PLZ STE 101
EAST STROUDSBURG, PA 18301-1351

Account Number:                10083874
Statement Date:                Aug 01, 2024
Contractual Monthly Payment:   $355.34
Current Interest Rate:         21.68%
Maturity Date:                 May 15, 2029
**Payment must be received on or before:**

4-761-97595-0049330-001-000-000-000-000

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332-7154

| Item Description | Amount |
|---|---|
| **Account Summary** | |
| Current Amount Due | $0.00 |
| Past Due Amount | $0.00 |
| Past Due Charges | $0.00 |
| **Total Amount Due** | **$0.00** |

**If you cannot make your payment on or before the due date please contact the branch listed on your statement.**

Please refer questions or requests for money by calling (570) 476-5330. You may also contact us at www.onemainfinancial.com or the address above. Please include your name and account number on any correspondence.

### Activity Since Last Statement

| Account Summary | Date | Amount | Late Fees | Other Fees | Applied to Balance | Balance is not payoff amount, call us for payoff amount. Balance |
|---|---|---|---|---|---|---|
| Previous Balance ....... | | | | | | $20,609.44 |
| Payment - Thank You | Aug 01, 2024 | $8,400.00 | | | $8,400.00 | $12,209.44 |
| Payment - Thank You | Aug 01, 2024 | $1,500.00 | | | $1,500.00 | $10,709.44 |
| Payment - Thank You | Aug 01, 2024 | $2,500.00 | | | $2,500.00 | $8,209.44 |
| Payment - Thank You | Aug 01, 2024 | $634.73 | | | $634.73 | $7,574.71 |
| Interest Refund | Aug 01, 2024 | $7,574.71 | | | $7,574.71 | $0.00 |



SHOUKRY, thank you for your final payment. Remember to call us or apply online at onemainfinancial.com any time you need cash. With same-day approvals, you can get your cash the day you apply.

Page 1 of 4                        All loans are subject to normal credit policy.

Retain this portion for your records                        MAPP1123  FCPD22

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Please detach and return this portion with your payment*
Please stop by our office or use the enclosed envelope to return your payment to the address below.
CHECK HERE FOR SPECIAL PAYMENT APPLICATION AND/OR ADDRESS CORRECTION ON BACK.

ONEMAIN
156 EAGLES GLEN PLZ STE 101
EAST STROUDSBURG, PA 18301-1351

**OneMain Financial.**



| Account Number: | 466810083874 | |
|---|---|---|
| | | Due on or before |
| On Time Payment: | $0.00 | |
| | | Pay after |
| Late Payment: | | |
| Enclosed is my payment for | $ | |
| Yes, I would like additional cash. | | |

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332-7154

ONEMAIN
P.O. BOX 740594
CINCINNATI OH 45274-0594

ELECTRONIC STATEMENT REPRINT

you may dispute directly through the applicable credit reporting agency or send in writing to OneMain, P.O. Box 3327, Evansville, IN 47732-3327, Fax: (800) 617-9932. Additional information can be found at www.omf.com.

**Negative Information Notice -** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

## PAYMENT OPTIONS

- Send check or money order via U.S. Mail or Overnight Mail to the payment address on the front of the billing coupon. **Checks received after 5:00 p.m. local time at the payment address on the front of the billing coupon will be credited as of the next business day.**
- If you have authorized Direct Pay or other electronic payments, the amount we actually debit or charge may be lower if the scheduled payment is more than your payoff amount on the payment date

**CHECKS MAY BE PROCESSED AS ACH PAYMENTS:** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your check, in some instances it may take longer based on processing times. You will not receive your check back from your financial institution.

- **Insufficient Funds**
  Payments returned for insufficient funds may be represented based on your financial institutions' guidelines. OneMain is not responsible for fees incurred from your financial institution as a result of representment. For inquiries, please call the number listed on the front of this statement.
- **Principal Only and Special Handling Payments**
  If you have a special payment, please send or bring your payment to the branch address listed at the top of the prior page of this statement. Special payments include payoff, deferments, post-dated checks, judgments, bankruptcy and principal-only payments. Principal-only payments are only available for interest-bearing accounts.
- **On-line Payments**
  With on-line bill pay service, you can make a monthly payment through our secure on-line payment process, available 24 hours a day and seven days a week. You will no longer have to write and mail a check to OneMain each month when using our on-line bill pay service. Simply go to our website at www.omf.com and click on "Make a Loan Payment" to begin the process.
- **DirectPay (If Available)**
  With DirectPay, our convenient payment service, you'll no longer have to write and mail a check to OneMain each month. The exact amount of your minimum monthly payment will be automatically transferred from your checking account to OneMain. Along with the postage you save, you'll have a greater peace of mind. Because, no matter where you are or what you're doing, you can be certain your payment will be on time, every time. Please contact your branch, listed on the prior page of this statement, to obtain an authorization form for this service.
- **Pay by Interactive Phone Service Terms -** Call us at 800-290-7002 to pay by interactive phone service. By using the interactive phone service and providing the last 4 digits of your social security number, you authorize OneMain to electronically debit your bank account and, if necessary, electronically credit your bank account to correct erroneous debits. OneMain reserves the right to terminate or change the terms of the interactive phone service at any time.
- Late charges and insufficient funds fees may be assessed as permitted by your Loan Agreement and state law. For more information regarding the timing and amounts of charges, please refer to your Loan Agreement.

## FOR CONSUMER FINANCE LOANS

**AZ:** Loans made by OneMain Financial Group, LLC 100 International Dr., 16th Floor, Baltimore, MD 21202. Loans also serviced by OneMain Consumer Loan, Inc., 600 NW 2nd Street, Evansville, IN 47708 **CA:** Loans made and/or serviced pursuant to a California Department of Financial Protection and Innovation Finance Lenders License. **MT:** Loans made and/or serviced by OneMain Consumer Loan, Inc., 600 NW 2nd Street, Evansville, IN 47708 or OneMain Mortgage Services, Inc., 601 NW 2nd Street, Evansville, IN 47708 or OneMain Financial Group, LLC 100 International Dr., 16th Floor, Baltimore, MD 21202. **NJ:** Loans made and/or serviced by OneMain Consumer Loan, Inc., principal office: 600 NW 2nd Street, Evansville, IN 47708 or OneMain Mortgage Services, Inc., 601 NW 2nd Street, Evansville, IN 47708 or OneMain Financial Group, LLC 100 International Dr.,16th Floor, Baltimore, MD 21202, licensed by the NJ Department of Banking and Insurance. **NY:** Loans made by OneMain Financial Group, LLC Licensed Lender – NY State Department of Financial Services. **You may file complaints about OneMain Mortgage Services, Inc. with the NY State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1(800) 342-3736 or by visiting the Department's website at www.dfs.ny.gov. OR:** Loans made/ and or serviced by OneMain Consumer Loan, Inc., OneMain Financial Group, LLC or OneMain Mortgage Services, Inc. **PA:** Loans made and/or serviced by OneMain Consumer Loan, Inc. or OneMain Financial Group, LLC, all licensed by the Pennsylvania Department of Banking and Securities. **RI:** Loans made and/or serviced by OneMain Consumer Loan, Inc. or OneMain Financial Group, LLC, Rhode Island Licensed Lender and Licensed Small Loan Lender and OneMain Mortgage Services, Inc., Rhode Island Licensed Lender. **TX:** Loans made by OneMain Financial Group, LLC, 100 International Dr., 16th Floor, Baltimore, MD 21202. **WA:** Loans made and/or serviced by OneMain Consumer Loan, Inc. (CL-937358); OneMain Financial Group, LLC (CL-1339418); or OneMain Mortgage Services, Inc. (CL-931153). **WV:** Loans in West Virginia are originated and/or serviced by OneMain Financial, Inc.

If you are not currently entitled to the protections of the United States Bankruptcy Code, then this communication is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose.

NOTICE: If you are currently entitled to the proections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the loan account which is the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT OR RECOVER ANY AMOUNTS OWED IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY. Any payments made on a loan which has been discharged in bankruptcy are voluntary.

### SPECIAL PAYMENT APPLICATION

IF YOU HAVE MULTIPLE ACCOUNTS and wish to apply your payment to more than one account, please complete the following.

Please apply:

$ _____ to _____

Account Number

$ _____ to _____

Account Number

### ADDRESS CORRECTIONS

Street Address

City, State                    Zip Code

Home Phone                    Business Phone

4-761-97595-0049330-001-000-000-000-000

## What's around the corner for you?
# We're here to help.



**Stay in control** your way with the OneMain app.

• Schedule easy automatic loan payments
• Stay up to date on your montly credit score with VantageScore®[1]
• Renew your loan or check for offers[2]

Download the OneMain mobile app today

Download on the App Store
GET IT ON Google Play

More details on reverse side ▶

# Happy loan payoff!

While you celebrate your progress, we're celebrating you for being such a great customer. **Come back anytime.**



**OneMain** Financial®

**OneMain** Financial®
Better Borrowing. Brighter Future.

Loans, savings & budgeting tools, free financial education.

HPA1023

Download the OneMain mobile app today for 24-7 access to your account. Just go to your app store.

[1]The VantageScore® credit score is displayed for primary borrower only and is provided for educational purposes only. We do not guarantee that the credit score shown will be used by third parties to assess your creditworthiness or eligibility for any product or service or for employment.

[2]**Important Notice About Refinancing:** When you refinance your existing loan, your total finance charges over the life of the new loan may be higher than for your current loan, because your interest rate may be higher and/or your loan term may be longer. OneMain loans include origination fees. Visit omf.com/loanfees for more details.

Apple, the Apple logo, and iPhone are trademarks of Apple Inc., registered in the U.S. and other countries. App Store is a service mark of Apple Inc. Google, Android and Google Play are trademarks of Google Inc., registered in the U.S. and other countries.

**State Licenses:** OneMain Financial Group, LLC (NMLS # 1339418). CA: Loans made or arranged pursuant to Department of Financial Protection and Innovation California Finance Lender License. PA: Licensed by the Pennsylvania Department of Banking and Securities. VA: Licensed by the Virginia State Corporation Commission – License Number CFI-156. WA: Consumer Loan Company License.

MAPP1123

# We're here to help you reach your next goal—and all the ones after that.

800-431-3816   //   OMF.com/apply

   

All loans subject to our normal credit policies.

**State Licenses:** OneMain Financial Group, LLC (NMLS # 1339418). CA: Loans made or arranged pursuant to Department of Financial Protection and Innovation California Finance Lender License. PA: Licensed by the Pennsylvania Department of Banking and Securities. VA: Licensed by the Virginia State Corporation Commission – License Number CFI-156. WA: Consumer Loan Company License.

FCPD22

F2PA1023

# EXHIBIT I

Email from Defendant, detailing negligence.

## Lost check

From:   Shana Rodriguez (shana.rodriguez@omf.com)

To:     S.FAUNTLEROY@YAHOO.COM

Cc:     daniel.p.ziegler@omf.com

Date:   Monday, September 23, 2024 at 04:12 PM EDT

Looking to get STOP PAYMENT on check # 450967 for the amount of $8,400 made out to Onemain Financial back on 8/1/2024 the check was mailed out on 8/2/2024 we have to assume it was lost in the mail as the bank has not yet received it. We will need to ask the customer for a replacement check to close out account. Called NEPA ON 9/19/2024 they have confirmed the check has not been cashed yet need to reach out to customer to get replacement check.

Thank You,
Shana Rodriguez

Email Disclaimer

This E-mail contains confidential information belonging to the sender, which may be legally privileged information. This information is intended only for the use of the individual or entity addressed above. If you are not the intended recipient, or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the E-mail or attached files is strictly prohibited.

# EXHIBIT J

Plaintiff's recent credit profile detailing
fraudulent entries from Defendant OneMain

**ONEMAIN**

# $11,231

Reported balance • 29 days ago

| Loan amount | $20,715 |
|---|---|

Paid: $9,484

| Est APR | 1.10% |
|---|---|
| $355/mo | |

## Consolidate with a personal loan

Legal Disclosure

You have Outstanding Approval Odds* for

# 2 loans



| | |
|---|---|
| For you | Cards | **Loans** | Insurance | Money |



← 🔔 ⋮

| Term | 60 months (5 years) |
|---|---|
| Responsibility | Individual |
| Remarks | -- |
| 30/60/90 days late | 0/0/0 |

How do we get this info? ⓘ

## Dispute

Something not right? Visit the Dispute Center to submit or check the status of an ongoing dispute with TransUnion.

| **Go to Dispute center** |
|---|

## Contact Info    (844) 298-9773

ONEMAIN
PO BOX 1010
EVANSVILLE, IN 47706 USA

 For you    Cards    Loans    Insurance    Money

## Payment history

You've made 100% of your payments on time



|  | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2025 | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | | | | | |
| 2024 | | | | | ✓ | ✓ | ✓ | – | ✓ | ✓ | | |

| Last payment | Aug 1, 2024 |
|---|---|
| Payment status | Current |
| Worst payment status | No Info |

## Loan details    See full report

| Reported balance | $11,231 |
|---|---|
| Bureau | TransUnion |
| Account status | Open |
| Opened | May 10, 2024 |
| Type | Secured loan |
| Term | 60 months (5 years) |

| | |
|---|---|
| For you | Cards | **Loans** | Insurance | Money |



| Term | 60 months (5 years) |
|---|---|
| Responsibility | Individual |

### About these balances

These balances come from your credit report.

Are the numbers different from what you expect?

Most banks and lenders only report your balances to the credit bureaus once a month, so this number may not reflect your current balance. Check the 'last reported' date for each account. If you made a payment or a charge after this date, it's not reflected in the balance you see here.

| Close |
|---|

ONEMAIN
PO BOX 1010
EVANSVILLE, IN 47706 USA

# EXHIBIT K

September 2025 billing statement
from Defendant

# OneMain
## Financial.

REPRESENTATION OF ORIGINAL STATEMENT

ONEMAIN
156 EAGLES GLEN PLZ STE 101
EAST STROUDSBURG, PA  18301-1351

| | |
|---|---|
| Account Number: | 10083874 |
| Statement Date: | Aug 31, 2025 |
| Contractual Monthly Payment: | $355.34 |
| Current Interest Rate: | 21.68% |
| Maturity Date: | May 15, 2029 |
| **Payment must be received on or before:** | **Sep 15, 2025** |

6-761-17322-0122479-001-000-000-000-000

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332-7154

| Item Description | Amount |
|---|---|
| **Account Summary** | |
| Current Amount Due | $0.00 |
| Past Due Amount | $7,765.27 |
| Past Due Charges | $0.00 |
| **Total Amount Due** | **$7,765.27** |

**If you cannot make your payment on or before the due date please contact the branch listed on your statement.**

*Please refer questions or requests for money by calling (570) 476-5330. You may also contact us at www.onemainfinancial.com or the address above. Please include your name and account number on any correspondence.*

### Activity Since Last Statement

| Account Summary | Date | Amount | Late Fees | Other Fees | Applied to Balance | Balance is not payoff amount, call us for payoff amount. Balance |
|---|---|---|---|---|---|---|
| Previous Balance ....... | | | | | | $15,974.71 |

 Need additional cash? Just check the box on the portion below and return with your payment. We'll call as soon as we receive your request. Or call our office today at (570) 476-5330 to apply.

Page 1 of 2                                      All loans are subject to normal credit policy.

Retain this portion for your records

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Please detach and return this portion with your payment**
Please stop by our office or use the enclosed envelope to return your payment to the address below.
CHECK HERE FOR SPECIAL PAYMENT APPLICATION AND/OR ADDRESS CORRECTION ON BACK.

ONEMAIN
156 EAGLES GLEN PLZ STE 101
EAST STROUDSBURG, PA  18301-1351

 OneMain
Financial.



| Account Number: | 466810083874 |
|---|---|
| | Due on or before |
| On Time Payment: | $7,765.27 | Sep 15, 2025 |
| Late Payment: | | Pay after |
| Enclosed is my payment for | $ | |

☐ *Yes, I would like additional cash.*

SHOUKRY FAUNTLEROY
276 POWDERHORN RD
HENRYVILLE PA 18332-7154

ONEMAIN
P.O. BOX 740594
CINCINNATI OH  45274-0594

ELECTRONIC STATEMENT REPRINT

you may dispute directly through the applicable credit reporting agency or send in writing to OneMain, P.O. Box 3327, Evansville, IN 47732-3327, Fax: (800) 617-9932. Additional information can be found at www.omf.com. **Negative Information Notice** - We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

## PAYMENT OPTIONS

### It's easy to make a payment—just choose one of many convenient ways to pay:

- **ONLINE**
  Make or schedule a payment at OMF.com/login or in the OneMain mobile app using your bank account or debit card.
- **AUTOPAY (if available)**
  Set up automatic, recurring payments using your bank account. Log in to your online account or download the OneMain mobile app to choose the schedule that works for you.
- **PHONE**
  Give us a call at 833-390-2034 and follow the prompts to make a payment with your bank account or debit card. Please note, OneMain may change or discontinue this automated phone service at any time.
- **BRANCH**
  You can make a payment at any OneMain branch using a debit card, bank account, money order or check.
- **CASH**
  To pay with cash at participating locations, log in to your online account and select cash as your payment method. You'll get a text with a personalized code. Or, you can ask your local branch for a code before making your payment.
- **MAIL**
  You can mail a personal check, cashier's check or money order to the address on the front of your billing coupon. If it arrives after 5:00 p.m. local time, we'll apply it the next business day.
- **CHECKS MAY BE PROCESSED AS ACH PAYMENTS**
  When you pay by check, you're giving us permission to either process it as a regular check or use the check details to make a one-time electronic withdrawal from your account. In some cases, the funds may be withdrawn the same day we get your check, but timing can vary. Your bank won't return the paper check to you.
- **INSUFFICIENT FUNDS**
  If a payment doesn't go through because there aren't enough funds in your account, your bank may try to process it again based on their policies. OneMain isn't responsible for any fees your bank might charge. If you have any questions, we're happy to help—just call the number on the front of this statement.
- **PRINCIPAL-ONLY AND SPECIAL HANDLING PAYMENTS**
  If you want to make a principal payment on an interest-bearing loan, please call 833-390-2034 for help when paying by bank account or debit card. You can also pay by check or money order in person at any OneMain branch. Just write your loan account number and "Principal payment" in the memo line.
- **SPECIAL NOTES**
  o  If you've set up AutoPay or other electronic payments, we might withdraw less than the scheduled amount if your payoff is lower on the payment day.
  o  Late fees or insufficient funds charges may happen as allowed by your Loan Agreement and state law. For the full details, please take a look at your Loan Agreement.

## FOR CONSUMER FINANCE LOANS

**AZ**: Loans made by OneMain Financial Group, LLC 100 International Dr., 16th Floor, Baltimore, MD 21202. Loans also  serviced by OneMain Consumer Loan, Inc., 600 NW 2nd Street, Evansville, IN 47708.  **CA:** : Loans made and/or serviced pursuant to a California Department of Financial Protection and Innovation Finance Lenders License. **IL:** For information regarding debt management services, call the Department of Financial and Professional Regulation (Financial Institutions Division) at 888-473-4858. **MT:** Loans made and/or serviced by OneMain Consumer Loan, Inc., 600 NW 2nd Street, Evansville, IN 47708 or OneMain Mortgage Services, Inc., 601 NW 2nd Street, Evansville, IN 47708 or OneMain Financial Group, LLC 100 International Dr., 16th Floor, Baltimore, MD 21202. **NJ:** Loans made and/or serviced by OneMain Consumer Loan, Inc., principal office: 600 NW 2nd Street, Evansville, IN 47708 or OneMain Mortgage Services, Inc., 601 NW 2nd Street, Evansville, IN 47708 or OneMain Financial Group, LLC 100 International Dr.,16th Floor, Baltimore, MD 21202, licensed by the NJ Department of Banking and Insurance. **NY:** Loans made by OneMain Financial Group, LLC Licensed Lender – NY State Department of Financial Services. **You may file complaints about OneMain Mortgage Services, Inc. with the NY State Department of Financial Services. You may obtain further information from the New York State Department of Financial Services by calling the Department's Consumer Assistance Unit at 1(800) 342-3736 or by visiting the Department's website at www.dfs.ny.gov. OR:** Loans made/ and or serviced by OneMain Consumer Loan, Inc., OneMain Financial Group, LLC or OneMain Mortgage Services, Inc. **PA:** Loans made and/or serviced by OneMain Consumer Loan, Inc. or OneMain Financial Group, LLC, all licensed by the Pennsylvania Department of Banking and Securities. **RI:** Loans made and/or serviced by OneMain Consumer Loan, Inc. or OneMain Financial Group, LLC, Rhode Island Licensed Lender and Licensed Small Loan Lender and OneMain Mortgage Services, Inc., Rhode Island Licensed Lender. **TX:** Loans made by OneMain Financial Group, LLC, 100 International Dr.,  th Floor, Baltimore, MD 21202 **WA**: Loans made and/or serviced by OneMain Consumer Loan, Inc. (CL-937358); OneMain Financial Group, LLC (CL-1339418); or OneMain Mortgage Services, Inc. (CL-931153). **WV:** Loans in West Virginia are originated and/or serviced by OneMain Financial, Inc.

If you are not currently entitled to the protections of the United States Bankruptcy Code, then this communication is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose.

NOTICE: If you are currently entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the loan account which is the subject matter of this letter, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT OR RECOVER ANY AMOUNTS OWED IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY. Any payments made on a loan which has been discharged in bankruptcy are voluntary.

| SPECIAL PAYMENT APPLICATION | ADDRESS CORRECTIONS |
|---|---|
| IF YOU HAVE MULTIPLE ACCOUNTS and wish to apply your payment to more than one account, please complete the following.<br><br>Please apply:<br><br>$ _____  to _____<br>     Account Number<br><br>$ _____  to _____<br>     Account Number | Street Address<br><br>City, State                              Zip Code<br><br>Home Phone                         Business Phone |

We appreciate your patronage and continually strive to provide quality service to our customers. We welcome the opportunity to be of service and encourage you to contact us if you have any questions concerning your account. To ensure the proper handling of your inquiry, please do not write on this coupon. Send your inquiry directly to the branch address listed at top of prior page of statement.

# EXHIBIT L

OneMain account website dashboard screenshots

# OneMain Financial®

Shoukry ⌄

## Loan ****3874

Loan balance is **$15,974.71**
This balance is not your payoff amount

✓ You paid **$634.73** on 08/01/24

No payment is due at this time.
## $7,765.27

Enroll In AutoPay →

**Make a payment**

View account details →

### Trim by OneMain*

Let's get some cash back in your pocket.



With **$86M saved by customers,** check on your savings so far and activate even more benefits today.

*Learn more          Go to Trim →

## Check For New Offers

See if you qualify for more money. Checking your offers won't impact your credit score!

**Check for offers**

*Learn more*

### Credit Score*

## 586

Calculated using VantageScore

0 pts since last update on 07/31/25

*Learn more          Track your score →

## Your Local Branch

We're here to help in-person, over the phone or by email.

📍 156 EAGLES GLEN PLZ STE 101
EAST STROUDSBURG, PA 18301
Get Directions →

📞 1 (570) 476-5330

✉️ br4668@onemainfinancial.com

## Refer a friend — get $100

Help a friend get the money they need — and get $100 if they open a qualifying loan.
Refer up to 5 times a year.

Get a link to share with friends →

**Legal**

Loan amounts and fees

Legal & privacy center

Disclosures

Do not sell or share my personal information

📱 OneMain App

# OneMain Financial

Your Accounts ⌄    Profile & Support ⌄

Back to Loan Selection

## Account Summary

**CHECK FOR NEW OFFERS**

See if you qualify for more money[4].
Checking your offers won't impact your
credit score!

[ CHECK FOR OFFERS ]

**EAST STROUDSBURG BRANCH**

📞 (570) 476-5330

✉ Email This Branch

📖 Get Directions

### YOUR CURRENT PAYMENT

Loan ****3874

**Enroll in AUTOPAY**

Tired of logging in every month?
Sign up for automatic payments.

[ Enroll Now ]

Due on Sep. 15, 2025

## $7,765.27

[ MAKE A PAYMENT ]

Having trouble making payments?

**CURRENT BALANCE**

As of Sep. 03, 2025

**$15,974.71**

This balance is not your payoff amount

This is a pre-computed loan.

✅ **You're Paid Ahead!**
Pay now to stay ahead and pay off your loan faster. Learn more

### PAYMENT HISTORY

Payment history is unavailable. Please check your statement for payment information.

View Billing Statements

View Tax Statements

View Documents

**ACCOUNT SETTINGS** 

OFF  Paperless Billing Statements

OFF  Payment Reminders

**REFER A FRIEND — GET $100** 

Get a link to share with friends. If they open a loan, you get $100 — refer up to 5 times a year.

REFER FRIEND →

**VANTAGE SCORE: 586**[5] 

**TAKE ME TO TRIM** 

**GET OUR MOBILE APP** 

Enter your cell phone number below to receive a download link to the OneMain app now!

[ Cell phone number ]

By providing your cell phone number and clicking submit, you are authorizing OneMain to send a link to download the OneMain app to your cell phone number. Standard SMS rates apply.

[ SUBMIT ]

Learn more →

**OneMain** Financial

Your Accounts ⌄    Profile & Support ⌄

Do Not Sell or Share My Personal Information



If you are using a screen reader and are having problems using the website please call 800-290-7002 for assistance.

**OneMain Holdings, Inc.**
601 N.W. Second Street.
Evansville, IN 47708-1013

Copyright © 1996–2025, All rights reserved.

[1] Payoff and cash out amount could change daily based on payments made, accruing interest, and fees (if applicable).

Important information about our unsecured prequalified offers:

This prequalified offer is not guaranteed. We've determined that your credit may qualify you for this amount, but you must apply for the offer. To verify you still qualify, we will request an updated credit report. If you still qualify, we will verify your identity, review your expenses, and confirm that you have the necessary income before you can be approved. Loan proceeds cannot be used for postsecondary educational expenses as defined by CFPB's Regulation Z such as college, university, or vocational expenses; for any business or commercial purpose; to purchase securities; or for gambling or illegal purposes.

[2] Important Notice About Refinancing to Obtain More Money: Before you refinance your existing balance to obtain additional money, you should carefully consider the advisability of increasing your debt, your monthly obligations and the length of your repayment term. Loans include origination fees. Visit omf.com/loanfees for more details.

[3] Average time based on beta version testing.

[4] Not all applicants will qualify for larger loan amounts or most favorable loan terms. Larger loan amounts require a first lien on a motor vehicle no more than ten years old, that meets our value requirements, titled in your name with valid insurance. Loan approval and actual loan terms depend on your state of residence and your ability to meet our credit standards (including a responsible credit history, sufficient income after monthly expenses, and availability of collateral). APRs are generally higher on loans not secured by a vehicle. Highly-qualified applicants may be offered higher loan amounts and/or lower APRs than those shown above. Active duty military, their spouse or dependents covered by the Military Lending Act may not pledge any vehicle as collateral.

Borrowers in these states are subject to these minimum loan sizes: Alabama: $2,100. California: $3,000. Georgia: $3,100. North Dakota: $2,000. Ohio: $2,000. Virginia: $2,600.

Borrowers in these states are subject to these maximum loan sizes: North Carolina: $11,000 for unsecured loans to all customers; $11,000 for secured loans to present customers. Maine: $7,000. Mississippi: $12,000. West Virginia: $13,500. Loans to purchase a motor vehicle or powersports equipment from select Maine, Mississippi, and North Carolina dealerships are not subject to these maximum loan sizes.

[5] The credit score provided is for educational purposes only. We do not guarantee that the credit score shown will be used by us or third parties to assess your creditworthiness or eligibility for any particular product or service or for employment.

**State Licenses:** OneMain Financial Group, LLC (NMLS#1339418) — CA: Loans made or arranged pursuant to Department of Financial Protection and Innovation California Finance Lenders License. PA: Licensed by the Pennsylvania Department of Banking and Securities. VA: Licensed by the Virginia State Corporation Commission - License Number CFI-156. OneMain Mortgage Services, Inc. (NMLS# 931153) — NY: Registered New York Mortgage Loan Servicer. Additional licensing information available at OneMain Disclosures.



## OneMain Financial®

Shoukry ⌄

‹ Back

# Document Center

| Folder name | Actions |
|---|---|
| 📧 Aug 2025 Billing Statement | View › |
| 📧 Jul 2025 Billing Statement | View › |
| 📧 Jun 2025 Billing Statement | View › |
| 📧 May 2025 Billing Statement | View › |
| 📧 Apr 2025 Billing Statement | View › |
| 📧 Mar 2025 Billing Statement | View › |
| 📧 Feb 2025 Billing Statement | View › |
| 📧 Jan 2025 Billing Statement | View › |
| 📁 2024 Billing Statements | Go to folder › |

**Legal**

Loan amounts and fees

Legal & privacy center

Disclosures

Do not sell or share my
personal information

📱 OneMain App





OneMain Financial

Shoukry ⌄

‹ Back

# Document Center

| Folder name | Actions |
| --- | --- |
| 📰 Dec 2024 Billing Statement | View › |
| 📰 Nov 2024 Billing Statement | View › |
| 📰 Oct 2024 Billing Statement | View › |
| 📰 Oct 2024 Billing Statement | View › |
| 📰 Aug 2024 Billing Statement | View › |
| 📰 Jul 2024 Billing Statement | View › |
| 📰 Jun 2024 Billing Statement | View › |
| 📰 May 2024 Billing Statement | View › |

## Legal

Loan amounts and fees

Legal & privacy center

Disclosures

Do not sell or share my
personal information

📱 OneMain App

If you are using a screen reader and are having
problems using the website please call
**800-290-7002** for assistance.

**State Licenses:** OneMain Financial Group, LLC (NMLS#
1339418) – **CA:** Loans made or arranged pursuant to
Department of Financial Protection and Innovation California

# EXHIBIT M

October 2024 deceptive email from Defendant

Action required: your payment didn't go through

From:   OneMain Financial (onemain@service.omf.com)

To:     s.fauntleroy@yahoo.com

Date:   Thursday, October 10, 2024 at 10:13 AM EDT

**OneMain** Financial.                                    <u>LOG IN</u>

# Your payment couldn't be processed

Hi Shoukry,

Your bank returned the payment you made on 10/9/2024 for $8,400.00, so we weren't able to apply it to your loan balance. Sometimes these things happen, so please try again if you haven't already. You can **make a payment** in your online account, on the mobile app or by calling 570-476-5330.

If something has changed and you need to make different arrangements, just give us a call. We'll work out a solution together.

**MAKE A PAYMENT**

## Questions?
We're here to help. Call 570-476-5330.

# Take scheduling a payment off your to-do list.

Direct Pay automatically keeps payments on time, every time.*

Set a schedule that works for you: once a month, twice a month or every two weeks.

**ACTIVATE DIRECT PAY**

   

*OPTIONAL PRODUCTS CAN BE CANCELED FOR A REFUND*
*For questions about your optional products, please call (833) 910-1583. You may cancel any of your optional product(s) at any time for a full or partial refund of the unused product(s), by calling (833) 585-1869.*

**ABOUT THIS MESSAGE**

Please do not reply to this unmonitored mailbox. For account specific inquiries, kindly call 1-877-550-6246 or visit our website to find your branch.

This email was sent by: OneMain Financial, 601 NW Second Street, Evansville, Indiana 47708.

\*You will receive an email once your Direct Pay enrollment is complete. Please note it may take up to 24 hours for your enrollment to process in our system.

If you are not currently entitled to the protections of the United States Bankruptcy Code, then this communication is an attempt to collect a debt by a debt collector, and any information obtained will be used for that purpose.

**NOTICE**: If you are currently entitled to the protections of the United States Bankruptcy Code (11 U.S.C. §§ 362; 524) regarding the loan account which is the subject matter of this communication, the following applies to you: THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT OR RECOVER ANY AMOUNTS OWED IN VIOLATION OF THE BANKRUPTCY CODE AND IS FOR INFORMATIONAL PURPOSES ONLY. Any payments made on a loan which has been discharged in bankruptcy are voluntary.

OneMainFinancial  |  Legal & Privacy  |  Disclosures

# EXHIBIT N

Certified cease-and-desist and other notices sent to Defendant

Shoukry Fauntleroy
276 Powderhorn Rd.
Henryville, PA 18332

12/28/2024

ONEMAIN
156 Eagles Glen Plz Ste 101
East Stroudsburg, PA 18301-1351

Subject: Cease and Desist Communication Regarding Account #10083874 OR 466810083874

Dear OneMain Financial,

I am responding to your contact about a debt you are trying to collect. You contacted me by phone on September 19th, 21st, 23rd, 25th, 26th of 2024 and several other dates since. You also contacted me via email on September 23rd, October 10th, November 1st and several other dates since. Billing statements continue to be generated for this debt, which was fully satisfied on August 1, 2024. As of November 30, 2024, you identified the debt as:

Account Number: 10083874
Statement Date: Nov 30, 2024
Contractual Monthly Payment: $355.34
Current Interest Rate: 21.68%
Maturity Date: May 15, 2029
**Payment must be received on or before: Dec 15, 2024**
**Account Summary**

| Item Description | Amount | |
|---|---|---|
| Current Amount Due | $0.00 | |
| Past Due Amount | $0.00 | |
| Past Due Charges | | $7,765.27 |
| **Total Amount Due** | **$7,765.27** | |

Please stop all communication with me about this debt, except for written confirmation that you will comply with this request, sent to my address listed above.

Note that I dispute having any obligation for this debt, as it was paid in full in August of 2024. Correct this immediately in your system and with credit reporting agencies/bureau. If you continue to report it to any credit bureau/agency as anything other than a fully satisfied debt since August of 2024, I will pursue legal remedy.

Thank you for your cooperation.

Sincerely,

Shoukry Fauntleroy

# SHOUKRY FAUNTLEROY

## 276 Powderhorn Rd., Henryville, PA 18332

**Via Certified Mail**
OneMain Financial, Legal Department
100 International Drive
16th Floor
Baltimore, MD 21202

July 2, 2025

RE: SECOND NOTICE OF DISPUTE AND DEMAND FOR RESOLUTION –
Previously Settled Account # 10083874 **OR** 466810083874

My name is Shoukry Fauntleroy and sending this second dispute notice in reference to
OneMain Financial (hereinafter OneMain) account number **10083874**. OneMain provided a
secured loan and agreement to me in May of 2024. I paid this loan off in full on August 1,
2024. The payment for this account has been fully tendered as of August 2, 2024 and the
debt is extinguished as per UCC 3-603(b) and PA Code 13 Pa.C.S. § 3603. Your
acceptance of that tender of payment (furnished in person, at 156 Eagles Glen Plz., Ste.
101, East Stroudsburg, PA 18301 on August 1st 2024) as full settlement is required by law
and is not optional.

Again, I officially dispute OneMain's fraudulent charges and related violations of the UCC,
CFPA, FCRA, FCEUA, FDCPA, TILA, TCPA, ECOA, various federal and state civil &
criminal laws. OneMain willfully and negligently failed to comply with its obligations
under the Fair Credit Reporting Act (FCRA) and its related fiduciary duties. OneMain has
slandered my name to third parties with false implications that I supplied them with a bad
check. I never authorized OneMain to contact my banking institution, nor have I consented
to OneMain reopening a loan account in my name. OneMain's attempt to charge me
$7,765.27 in interest on a non-existent loan is criminal. Furthermore, the $15,974.71
balance listed on the latest communication from OneMain is further confusing and
fraudulent. OneMain has repeatedly (22+ times) violated a cease and desist notice sent by
certified mail on December 28th, 2024, and has harassed me for months since August of
2024 after this loan was fully paid. 15 U.S. Code § 1681n outlines the civil liability for
willful noncompliance with the FCRA.

The nature and basis of this claim and dispute stems from OneMain's documented
Negligence, Failure to Use Reasonable Care, Fraud and Misrepresentation, Harassment,
Slander, Wrongful Interference, Breach of Contract, Failure to Perform, Wrongful Failure
to Honor a Loan Commitment, Defamation, Unjust Enrichment, Wire Fraud, Predatory
Lending, Unconscionable Practices, False Statements, Concealment, Racketeering, Usury,
Infliction of Emotional Distress and Loss of Opportunity.

I am hereby asserting a Claim for **$107,000** in damages which is based on OneMain's violations listed above, and its failure to properly process prepayment of loan account in accordance with the agreement. Specifically, as a result of the violations described above, I have lost access to business and employment opportunities with a potential employers, resulting in **$50,000** of lost wages. This calculation is based on the yearly projected remuneration. Additionally, I was denied loans for college, denied credit lines from numerous creditors, and emergency funding as a result of OneMain's wrongful actions. I incurred **$20,000** in high-interest loan costs due to the extremely limited funding options as a result of the extensive damage done to my credit profile by OneMain's inaccurate and fraudulent entries. OneMain's actions of breaching confidentiality and contacting my banking institution is a violation of my privacy rights, which has substantively injured me. I have suffered reputational damage as a result of OneMain's wrongful actions. OneMain's persistent harassment after being served with a cease and desist notice by certified mail has caused additional damage, **$22,000** in statutory & punitive damages, and **$15,000** compensatory damages due to emotional distress.

I do not (nor have I ever) consent or authorize OneMain to disclose my confidential account records or related information to anyone other than Shoukry Fauntleroy.

In spite of the cease and desist notice sent to OneMain in December of 2024, I formally demand that OneMain contact me via USPS mail with an immediate resolution (*I absolutely am not paying OneMain anything else and would never contract with OneMain, so do not dare to contact me with any attempt to collect monies from me again*). I will allow for an opportunity for OneMain to resolve this issue via an Informal Settlement Conference. However, if I do not receive effective communication by USPS mail detailing an immediate date, time and location for a conference in resolution of the matter described herein, on or before **July 31, 2025**, I will proceed as if you have no intention to resolve this matter at this stage.

Sincerely,

Shoukry Fauntleroy   (All Rights Reserved Without Prejudice UCC 1-308)

# SHOUKRY FAUNTLEROY

### 276 Powderhorn Rd., Henryville, PA 18332

**Via Certified Mail**
OneMain Financial, Legal Department
100 International Drive
16th Floor
Baltimore, MD 21202

July 12, 2025

RE: THIRD NOTICE OF DISPUTE AND DEMAND FOR RESOLUTION /
    ARBITRATION –   Previously Settled Account # 10083874 **OR** 466810083874

My name is Shoukry Fauntleroy and sending this third dispute notice in reference to
OneMain Financial (OneMain) account number **10083874**. OneMain provided a secured
loan and agreement to me in May of 2024. After realizing I was deceived by OneMain in
regards to this unconscionable lending agreement, I immediately paid this loan off in full
on August 1, 2024. The payment for this account has been fully tendered as of August 2,
2024 and the debt is extinguished as per UCC 3-603(b) and PA Code 13 Pa.C.S. § 3603.
OneMain's acceptance of that tender of payment (furnished in person, at 156 Eagles Glen
Plz., Ste. 101, East Stroudsburg, PA 18301 on August 1st 2024) as full settlement is
required by law and is not optional. Any attempt to dishonor a negotiable instrument is
unlawful.

Again, I officially dispute OneMain's fraudulent charges and related violations of the
Uniform Commercial Code (UCC), Consumer Financial Protection Act of 2010 (CFPA),
Fair Credit Reporting Act (FCRA), Fair Credit Extension Uniformity Act (FCEUA), Fair
Debt Collection Practices Act (FDCPA), The Truth in Lending Act (TILA), Telephone
Consumer Protection Act of 1991 (TCPA), Equal Credit Opportunity Act (ECOA), Code of
Federal Regulations (CFR), Unfair Trade Practices and Consumer Protection Law
(UTPCPL), and various federal, state civil & criminal laws. OneMain willfully and
negligently failed to comply with its obligations under the FCRA and its fiduciary duties
related to the above acts, codes and laws. OneMain has slandered my name to third parties
with false implications that I supplied them with a bad check. I never authorized OneMain
to contact my banking institution, nor have I consented to OneMain reopening a loan
account in my name. OneMain's attempt to charge me $7,765.27 in interest on a non-
existent, unapproved loan is criminal. Furthermore, the $15,974.71 balance listed on the
latest statement from OneMain is further confusing and fraudulent. OneMain has
repeatedly (23+ times) violated a cease and desist notice sent by certified mail on
December 28th, 2024, and has harassed me for months since August of 2024 after this loan
was fully paid. 15 U.S. Code § 1681n outlines the civil liability for willful noncompliance
with the FCRA.

The nature and basis of this claim & dispute stems from OneMain's documented Negligence, Breach of Fiduciary Duty, Failure to Use Reasonable Care, Fraud and Misrepresentation, Harassment, Slander of Credit, Publication, Wrongful Interference, Breach of Contract, Failure to Perform, Wrongful Failure to Honor a Loan Commitment, Defamation, Unjust Enrichment, Wire Fraud, Wrongful Dishonor, Predatory Lending, Unconscionable Practices, False Statements, Identity Theft, Concealment, Racketeering, Infliction of Emotional Distress and Loss of Opportunity.

I am hereby asserting a Claim for **$108,000** in damages which is based on OneMain's violations listed above, and its failure to properly process prepayment of loan account in accordance with the agreement. Specifically, as a result of the violations described above, I have lost access to business and employment opportunities with a potential employers, resulting in **$50,000** of lost wages. This calculation is based on the yearly projected remuneration. Additionally, I was denied loans for college, denied credit lines from numerous creditors, and emergency funding as a result of OneMain's wrongful actions. I incurred **$20,000** in high-interest loan costs due to the extremely limited funding options as a result of the extensive damage done to my credit profile by OneMain's inaccurate and fraudulent entries. OneMain's actions of breaching confidentiality and contacting my banking institution is a further violation of my privacy rights, which has substantively injured me. I have suffered reputational damage as a result of OneMain's wrongful actions. OneMain's persistent harassment after being served with a cease and desist notice by certified mail has caused additional damage, **$23,000** in statutory & punitive damages, and **$15,000** compensatory damages due to emotional distress.

I do not (nor have I ever) consent or authorize OneMain to disclose my confidential account records or related information to anyone other than Shoukry: Fauntleroy.

In spite of the cease and desist notice sent to OneMain in December of 2024, I formally demand that OneMain contact me via USPS mail with an immediate resolution (*I absolutely am not paying OneMain anything else and would never contract with OneMain, so do not dare to contact me with any attempt to collect monies from me again*). I have allowed for an opportunity for OneMain to resolve this issue via an Informal Settlement Conference during this extended Informal Resolution Period since my first dispute notice was sent on December 28th 2024. I am now sending this third notice concurrently along with my Demand for Arbitration, costs paid by OneMain due to the misrepresentation concerning the aforementioned agreement. If I do not receive effective communication by USPS mail from OneMain detailing an immediate date, time and location for a conference in resolution of the matter described herein or a commitment to paying all costs/fees related to arbitration, on or before **July 31, 2025**, I will proceed as if you have no intention to resolve this matter at this stage.

Sincerely,

_____
Shoukry: Fauntleroy
All Rights Reserved Without Prejudice UCC 1-308

# EXHIBIT O

## Multiple credit denials

## Information about your loan request through Lending Tree

From:   Upgrade (email@mail.upgrade.com)

To:   s.fauntleroy@yahoo.com

Date:   Sunday, December 29, 2024 at 04:21 PM EST



Hi SHOUKRY,

You recently checked your rates for a loan on Lending Tree's website. Unfortunately, we could not provide a rate quote for you at this time. However, you may reapply in 30 days if you feel that your circumstances have changed.

Click here for more information on why we could not approve your application.

Thank you,
Upgrade Customer Support

## Free Credit Monitoring

Understand and track your Credit Health in seconds.

Sign Up For Free

**Please do not reply directly to this message as it was sent from an unattended mailbox.**

This email was sent based on your communication preferences. Additionally, some messages are required for the maintenance of your account.

<u>Privacy</u>

© 2024 Upgrade, Inc. All rights reserved.

Upgrade is located at 275 Battery Street, 23rd Floor, San Francisco, CA 94111.

T_PFD

# EXHIBIT P

Credit denial from Defendant OneMain

From:  OneMain Financial (onemain@service.omf.com)

To:  s.fauntleroy@yahoo.com

Date:  Wednesday, January 29, 2025 at 10:04 AM EST

## OneMain Financial.

# Thanks for looking into OneMain loan offers.

01/29/2025
Communication ID: 160702807

Hi Shoukry,

We are responding to the loan request(s) you made recently, either directly with OneMain Financial or through an online loan site such as LendingTree or Intuit Credit Karma.

We know how important it can be to get money when you need it. Unfortunately, we are unable to provide you with any loan offers at this time.

> **Important:** Checking for loan offers did not affect your credit score.

The following requests were denied for the reasons listed below:

Application date: 12/29/2024
Reference #: 577939393
Reason(s) for denial:

- Length of time revolving trades have been established
- Number of inquiries
- Payment on accounts

We obtained information from one or more credit reporting agencies as part of our consideration of your application. These agencies were not involved in our decision

on your application, but you are entitled to know what information is included in your credit file with the agency or agencies. Under a law called the Fair Credit Reporting Act, you can obtain a free copy of your credit report from them if you request it within 60 days of receiving this notice. You can also dispute the accuracy or completeness of any information in your credit file directly with the agency or agencies.

The agency or agencies are listed below.

Experian
P.O. Box 40
Allen, TX 75013
844-922-2743

TransUnion
2 Baldwin Place P.O. Box 1000
Chester, PA 19016
800-888-4213

**Remember that your financial picture can change over time**. Visit OMF.com/ Resources for free resources to help you brush up on topics like budgeting, building credit and saving money.

We'll be happy to take a fresh look if you apply for a OneMain loan offer in the future. When you're ready, come back to OMF.com to check for offers.

Sincerely,

OneMain

---

NOTICE: The Federal Equal Credit Opportunity Act prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue NW, Washington, DC 20580.

---

**ABOUT THIS MESSAGE**

Please do not reply to this unmonitored mailbox.

This email was sent by OneMain Financial, 601 NW Second Street, Evansville, IN 47708.

You may consider contacting a credit counseling service, such as the National Foundation for Credit Counseling. Call 1-800-388-2227 for a list of their offices, or visit their website at www.nfcc.org.

OneMain Financial  |  Legal & Privacy  |  Disclosures

# EXHIBIT Q

Student loan application denial

### PA Forward Student Loan Application Decision

From:  no_reply@apply.pheaa.org

To:     S.FAUNTLEROY@YAHOO.COM

Date:  Monday, April 28, 2025 at 04:02 PM EDT

**Application ID:** 6145295

Dear SHOUKRY,

Thank you for applying for a PA Forward Student Loan. We are unable to approve your application as a single applicant.

However, you can add a qualified co-signer by **05/25/2025** by logging in to our website and clicking the "Add a Co-signer" action button. If your co-signer is approved, we will continue processing your application.

**Log In ⤳**

Please be aware that we are unable to approve your original application as a single applicant for the reason(s) listed below.

**Principal Reason(s) for Credit Denial**

- Credit Score does not meet minimum requirements
- Income insufficient for amount of credit requested

NOTE: If a co-signer is not added, or you do not qualify with a co-signer you will receive a formal adverse action notice with all required disclosures within the notification timeframe.

We are available to assist you with any further questions. We can be reached by email at studentloans@pa-forward.org or by phone at 1-844-PA-FORWD (1-844-723-6793). Our office hours are Monday through Friday, 8:00 AM to 8:00 PM (ET).

Sincerely,

PA Forward Student Loan Team

**Important Notice**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the consumer Credit Protection Act. The Federal Agency that administers compliance with the law concerning this creditor is: The Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

EID:4010:20250428

 logo.png
37.5 kB

PA Forward Student Loan Application Decision

From: no_reply@apply.pheaa.org
To: S.FAUNTLEROY@YAHOO.COM
Date: Monday, May 26, 2025 at 09:22 AM EDT

**Application ID:** 6145295

Dear SHOUKRY,

Thank you for applying for a PA Forward Student Loan. We have recently reviewed your credit history and we are unable to approve your application for the reason(s) listed below.

**Principal Reason(s) for Credit Denial**

- Credit Score does not meet minimum requirements
- Income insufficient for amount of credit requested

**Your Right to Get Your Credit Report**

Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The consumer reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you. You also have a right to a free copy of your report from the reporting agency, if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting agency.

| | |
|---|---|
| **Name:** | **TransUnion LLC** |
| **Address:** | **PO Box 1000, Chester, PA 19016** |
| **Toll-free Telephone Number:** | **1-800-888-4213** |

**Information about Your Credit Score**

We also obtained your credit score from this consumer reporting agency and used it in making our credit decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit score: 656

Date: 04/28/2025

Scores range from a low of 300 to a high of 850.

Key factors that adversely affected your credit score are:

- Derogatory public record or collection filed
- Proportion of balances to credit limits on bank/national revolving or

      other revolving accounts is too high
- Proportion of loan balances to loan amounts is too high
- Too many accounts with balances

**If you have any questions regarding this notice, you should contact:**

PA Forward Student Loan
PO Box 2280
Malvern, PA 19355
1-844-PA-FORWD (1-844-723-6793),
Monday through Friday, 8:00 AM to 8:00 PM (ET)
studentloans@pa-forward.org

**Important Notice**

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the consumer Credit Protection Act. The Federal Agency that administers compliance with the law concerning this creditor is: The Federal Trade Commission, Equal Credit Opportunity, Washington, DC 20580.

Sincerely,

PA Forward Student Loan Team

EID:4046:20250526

logo.png
37.5 kB

# EXHIBIT R

Apple credit denial

Your Apple Card application status

| | |
|---|---|
| From: | Apple Card Support (no_reply@post.applecard.apple) |
| To: | s.fauntleroy@yahoo.com |
| Date: | Saturday, May 24, 2025 at 08:31 AM EDT |



**Apple Card Applicant:**
Shoukry Fauntleroy, s.fauntleroy@yahoo.com

# Your application
# has been reviewed.

Thank you for your interest in Apple Card. Goldman Sachs Bank USA has reviewed your application, and it was not approved at this time because:

- You have recently experienced collections activity

**Goldman Sachs Bank USA received your credit score from TransUnion Consumer Solutions.**

Your credit score is a number that reflects the information in your consumer report. Your credit score can change, depending on how the information in your consumer report changes.

Your credit score as of May 24, 2025: **647**

Scores range from a low of 300 to a high of 850.

Learn more ›

This decision will not impact your credit score.

**Key factors that adversely affected your credit score:**

- Derogatory public record or collection filed
- Proportion of balances to credit limits on bank/national revolving or other revolving accounts is too high
- Too many accounts with balances
- Proportion of loan balances to loan amounts is too high

If you have any questions regarding your credit score, you should

contact TransUnion Consumer Solutions at:

**TransUnion Consumer Solutions**

P.O. Box 1000

Chester, PA 19016-2000

1-800-916-8800

This decision was based in whole or in part on a report from the consumer reporting bureau(s) listed below. The bureaus themselves played no part in making this decision and are unable to supply specific reasons why your credit request has been denied.

You have a right under the Fair Credit Reporting Act to know the information contained in your credit file. You also have a right to a free copy of your report from the reporting bureau(s), if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report(s) you receive is inaccurate or incomplete, you have the right to dispute the matter with the reporting bureau(s).

**TransUnion Consumer Solutions**

P.O. Box 1000

Chester, PA 19016-2000

1-800-916-8800

Thanks again for your interest in Apple Card.

Apple Card is issued by Goldman Sachs Bank USA, Salt Lake City Branch.

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, DC 20552.

Goldman Sachs Bank USA, Salt Lake City Branch, Lockbox 6112, P.O. Box 7247, Philadelphia, PA 19170-6112.

# EXHIBIT S

Defendant response to CFPB/OAG
complaints

**OneMain** Financial.

June 4, 2025

Lauren Oleckna
Pennsylvania Office of Attorney General
Bureau of Consumer Protection
1600 Arch Street, Ste. 300
Philadelphia, PA 19103
loleckna@attorneygenral.gov

Re:    **Shoukry Fauntleroy**
       **BCP-25-05-013591**

Dear Lauren Oleckna:

OneMain Financial Group, LLC ("OneMain") is in receipt of a complaint you forwarded on behalf of Shoukry Fauntleroy. OneMain records indicate Mr. Fauntleroy also submitted the same complaint to the Consumer Financial Protection Bureau ("CFPB") on May 12, 2025. OneMain responded to the CFPB with a letter dated June 4, 2025. Attached is a copy of that response which OneMain believes addresses the issues raised by Mr. Fauntleroy.

If you or Mr. Fauntleroy has any questions concerning this matter, please call the OneMain Executive Office of Customer Care between 8 a.m. and 5 p.m. (Central time) at 888-864-0332.

                                   Sincerely,

                                   /s/ Cody Godby

                                   Cody Godby
                                   Executive Office of Customer Care

Attachment

[OneMain Confidential]

**OneMain** Financial.

June 4, 2025

Shoukry Fauntleroy
276 Powderhorn Road
Henryville, Pennsylvania 18332

Re:      Complaint filed with the Consumer Financial Protection Bureau ("CFPB")

Dear Shoukry Fauntleroy:

This letter responds to the CFPB complaint you filed regarding OneMain Financial Group, LLC ("OneMain"). OneMain welcomes the opportunity to respond.

As an initial matter, please note OneMain received similar complaints forwarded on your behalf by the Pennsylvania Office of Attorney General and Department of Banking. This response serves to also address issues raised in these complaints.

Our records show you entered into a loan agreement with OneMain on May 10, 2024, financing $12,800.00. Copies of your loan agreement and complete transaction history are attached for your convenience.

On August 1, 2024, you visited the East Stroudsburg, Pennsylvania OneMain branch and made three payments toward your account. Two payments totaling $3,134.73 were made using a debit card. You then provided two checks to pay the remaining balance of your loan. The first check was for $1,500.00 and was successfully applied toward your account. The second was a cashier's check (check number 450967) issued by NEPA Federal Credit Union ("NEPA FCU") for $8,400.00.

On August 2, 2024, OneMain became aware of an issue with processing the $8,400.00 cashier's check which prevented it from being deposited remotely. OneMain was therefore required to send the check to its financial institution for processing. While enroute to OneMain's financial institution, the check was lost in transit.

On September 19, 2024, OneMain contacted NEPA FCU regarding the cashier's check. NEPA FCU confirmed that the check had not been deposited and stated OneMain would need to request your cooperation to cancel the cashier's check and reissue it to OneMain. When OneMain spoke with you on September 23, 2024, you stated that you would contact NEPA FCU to reissue the cashier's check for $8,400.00. However, to date, OneMain has not received a reissued check and subsequent attempts to contact you have been unsuccessful.

[OneMain Confidential]

OneMain Letter to Shoukry Fauntleroy
Re: Your CFPB Complaint
June 4, 2025
Page 2

OneMain received a cease-and-desist letter from you on January 6, 2025. The representative who reviewed the correspondence did not properly update your account to reflect your request. We sincerely apologize for this error and have taken appropriate corrective action to ensure this error does not reoccur.

Our telephone records indicate that OneMain attempted to contact you twice following your cease-and-desist request – on February 11, and March 10, 2025. Upon receipt of your CFPB on complaint, OneMain placed a note on your account to cease all collection communication activity with the exception of billing statements, privacy notices, and other legally required communications.

As allowed by and in accordance with the Fair Credit Reporting Act ("FCRA"), OneMain reports its borrowers' account information each month to the credit reporting agencies. Additionally, each monthly billing statement states the following:

> **Negative Information Notice** – We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

OneMain disagrees with your claim that it is reporting fraudulent information regarding your account to the credit reporting agencies. To be sure, OneMain was unable to process the $8,400 cashier's check and did not receive the funds. As indicated above, OneMain confirmed with NEPA FCU that the check was outstanding as of September 19, 2024.

OneMain's policy is to report all account information accurately and completely as required by the FCRA. OneMain respectfully denies your request to remove your OneMain account information from your credit file or to provide compensation.

OneMain requests your cooperation in resolving the outstanding balance of your account. As soon as possible, please contact your bank to request they reissue the cashier's check for $8,400.00 to pay the remaining balance of your loan. Once the check is reissued, please send it to OneMain at P.O. Box 740594, Cincinnati, Ohio. 45274. If you have questions about your account, please contact OneMain's East Stroudsburg, Pennsylvania branch at 570-476-5330.

If you have additional questions concerning this matter, please feel free to call the OneMain Executive Office of Customer Care between 8 a.m. and 5 p.m. (Central time) at 888-864-0332.

Sincerely,

Executive Office of Customer Care

Attachment

[OneMain Confidential]

**LOAN AGREEMENT AND DISCLOSURE STATEMENT**    OneMain Financial.

| DATE 05/10/24 | ACCOUNT NUMBER ██████3874 | TYPE OF LOAN (Alpha) H00 | DATE FINANCE CHARGE BEGINS TO ACCRUE 05/13/24 |
|---|---|---|---|

| LENDER/SECURED PARTY NAME AND ADDRESS ("Lender") | BORROWER(S) NAME AND ADDRESS ("I","We") |
|---|---|
| ONEMAIN FINANCIAL GROUP, LLC<br>156 EAGLES GLEN PLZ STE 101<br>EAST STROUDSBURG, PA 18301-1351    570-476-5330 | SHOUKRY FAUNTLEROY<br>276 POWDERHORN RD<br>HENRYVILLE, PA 18332 |

I have carefully read this entire Loan Agreement And Disclosure Statement and all related documents which include the Optional Products Disclosure Summary, Truth In Lending Insurance Disclosure and, if applicable, Personal Property Appraisal Form and GAP Waiver Addendum, all of which collectively constitute the "Agreement." This Loan Agreement and Disclosure Statement is divided into four sections: **A. Truth In Lending Disclosures; B. Loan Terms And Conditions; C. Arbitration Agreement And Waiver Of Jury Trial and D. Entire Agreement/Notices/Signature.** If I had any questions, I asked them before I signed these documents. By signing, I indicate my agreement to the statements, promises, terms, and conditions contained in the Agreement.

### A. TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of my credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost me. | AMOUNT FINANCED<br>The amount of credit provided to me or on my behalf. | TOTAL OF PAYMENTS<br>The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 22.25% | $    8535.78 | $    12800.00 | $    21335.78 |

My Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 370.72 | 06/15/24 |
| 59 | $ 355.34 | monthly beginning 07/15/24 |

LATE CHARGE: [X]  If any payment is not paid in full within __10__ days after its due date, I will be charged __1.50__% of the unpaid amount of the payment, but not more than $N/A___ or less than $__1.00__.

[ ]  If any payment is not paid in full within ____ days after its due date, I will be charged $_____ if the entire scheduled payment exceeds $_____ or $_____ if the entire scheduled payment is $_____ or less.

PREPAYMENT: If I pay off early:  [ ] I may  [X] I will not   have to pay a penalty for prepaying all or part of a loan's principal balance.
[X] I may  [ ] I will not   get a refund or credit of part of the finance charge for a prepayment in full. I will not receive a refund or credit for a partial prepayment.

SECURITY: I am giving Lender a security interest in:  [ ] Unsecured   [X] Motor Vehicles   [ ] Other Collateral

| Year | Make | Model | VIN/Serial No. |
|---|---|---|---|
| 2014 | FORD | TAURUS | 1FAHP2MK6EG182961 |

See the remainder of this Agreement for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if any.

### ITEMIZATION OF AMOUNT FINANCED

Amounts paid to others on my behalf

| | | | |
|---|---|---|---|
| 1. $    100.00 | MV Certificate of Title Fee | Paid To GOVERNMENT AGENCY | |
| 2. $NONE | | Paid To | |
| 3. $NONE | | Paid To | |
| 4. $NONE | | Paid To | |
| 5. $NONE | | Paid To | |
| 6. $NONE | | Paid To | |
| 7. $NONE | | Paid To | |
| 8. $NONE | | Paid To | |
| 9. $NONE | | Paid To | |
| 10. $NONE | | Paid To | |
| 11. $ | | Paid To | |
| 12. $ | | Paid To | |
| 13. $ | | Paid To | |
| 14. $ | | Paid To | |
| 15. $ | | Paid To | |
| 16. $ | | Paid To | |
| 17. $ | | Paid To | |
| 18. $ | | Paid To | |
| 19. $ | | Paid To | |
| 20. $ | | Paid To | |
| 21. $ | | Paid To | |
| 22. $ | | Paid To | |
| 23. $ | | Paid To | |
| 24. $ | | Paid To | |
| 25. $NONE | Total Paid on Prior Account(s) with Lender | | |

Amounts Paid to me

| | | |
|---|---|---|
| 26. $    12700.00 | Paid To SHOUKRY FAUNTLEROY | |
| 27. $ | Paid To | |
| 28. $ | Paid To | |
| 29. $ | Paid To | |
| 30. $ | Paid To | |
| 31. $ | Paid To | |
| $    12800.00 | Amount Financed (Sum of lines 1 - 24, 26 - 31) | |
| $    150.00 | Prepaid Finance Charges (itemized below) | |

### PREPAID FINANCE CHARGES

| | | |
|---|---|---|
| 1. $    150.00 | Service Charge | Paid To LENDER |
| 2. $NONE | | Paid To |
| 3. $NONE | | Paid To |
| 4. $NONE | | Paid To |
| 5. $NONE | | Paid To |
| 6. $NONE | | Paid To |
| 7. $NONE | | Paid To |
| 8. $NONE | | Paid To |

### THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT.

By signing below, I acknowledge receipt of a copy of this Federal Disclosure Statement.

E-SIGNED by SHOUKRY FAUNTLEROY
on 2024-05-10 21:04:28 GMT

_____     _____
Borrower                                          Co-Borrower

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

PAAAK1 (12-05-21) C.E. Agreement

**B. LOAN TERMS AND CONDITIONS**

DATE OF LOAN.  05/13/24  (the date the Finance Charge is scheduled to begin to accrue).

PROMISE TO PAY.  For value received, I promise to pay to the order of the Lender all amounts due under this Agreement in accordance with the Payment Schedule set forth in the TRUTH IN LENDING DISCLOSURES, and with all other terms of this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full.

SECURITY INTEREST.  To secure all amounts due or which become due under this Agreement and my performance of all other terms of this Agreement, I hereby grant Lender a security interest under the Uniform Commercial Code or other applicable law in:  (a) the property identified in the "Security" disclosure of the TRUTH IN LENDING DISCLOSURES, including a purchase money security interest if property is being purchased with the proceeds hereof; (b) any substitutions or replacements of that property; and (c) the proceeds and products of that property ((a), (b), and (c) collectively referred to as the "Collateral").  I also hereby grant Lender a security interest in any unearned premiums from any credit insurance I have elected and purchased through Lender in connection with this transaction and any Required Insurance which protects the Collateral.  Lender's security interest shall remain in effect, and subject to any modifications, renewals, extensions, and future advances thereof, until I have paid in full all amounts due under this Agreement.  Notwithstanding any other provision of this Agreement, Lender is not granted, and will not have, a non-purchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law.  I authorize Lender to sign and file financing statements covering the Collateral without my signature.  I authorize Lender to file a copy of this Agreement as a financing statement when appropriate. Unless prohibited by law I agree to pay the recording costs of your filing a financing statement, continuation statement and for releasing the security interest upon my payment in full.

JOINT BORROWERS.  If more than one Borrower is named above, all Borrowers agree that we are jointly and severally liable and that Lender may enforce this Agreement against all or any of us, but not in a combined amount exceeding the amount due.

Each of us under this Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Collateral securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Except as otherwise required by law, Lender does not have to notify Borrower before instituting suit against another Borrower if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

CO-MAKERS (also referred to as CO-SIGNER(S)).  If I am signing this Agreement as a Co-Maker, I understand that I am equally responsible with the Borrower(s).  I agree that Lender may pursue me or any Co-Maker if this Agreement is in default.  Unless required by law, Lender will not notify me if:  (a) this loan is in default; (b) Lender agrees to accept different payment terms; (c) Lender releases any security interest; or (d) Lender releases any Borrower(s) or Co-Maker(s).

AUTHORIZATION TO USE CREDIT REPORT.  By signing this Agreement, I authorize Lender to obtain, review and use information contained in my credit report in order to determine whether I may qualify for other products and services marketed by Lender.  This authorization terminates when my outstanding balance due under this Agreement is paid in full. I may cancel such authorization at any time by writing the following:  OneMain, P.O. Box 142, Evansville, IN 47701-0142.  In order to process my request, Lender must be provided my full name, address, and account number.

VOLUNTARY CREDIT INSURANCE.  As used in this Agreement, the term "credit insurance" includes credit life insurance, credit disability insurance, credit involuntary unemployment insurance, and credit property insurance.  An affiliate of the Lender may provide the credit insurance that I voluntarily select.  I acknowledge that Lender and/or its affiliates may profit from my purchase of voluntary credit insurance.

REQUIRED INSURANCE.  I am required to maintain insurance in types, amounts, terms and deductible levels acceptable to Lender ("Required Insurance").  The Required Insurance must keep the Collateral insured against hazards for which Lender requires insurance.  Such coverage includes, but is not limited to, loss by theft, vandalism, collision, fire, and any other risks of loss that would either impair Lender's interest in the Collateral or adversely affect the value of the Collateral.  I have the option of providing the Required Insurance through an existing policy of insurance owned or controlled by me, or through a policy obtained and paid for by me.  I may purchase this Required Insurance through any insurer, insurance agent, or broker of my choice that is acceptable to Lender.  Lender may not decline to accept any insurance provided by me unless it is for reasonable cause.  Examples of reasonable cause include, but are not limited to, the financial condition of the insurer and the amount or type of coverage chosen.  My choice of insurer will not otherwise affect Lender's credit decision or my credit terms.  The types, amounts, and deductible levels that Lender requires under this Agreement may change during the term of the Agreement.  Required Insurance must:  (a) include a lender's loss payable provision; (b) name Lender, its successors and/or assigns, as loss payee; (c) provide that such insurance will not be canceled or modified without at least fifteen (15) days prior written notice to the loss payee; and (d) not include any disclaimer of the insurer's liability for failure to give such notice.  I shall promptly give to Lender satisfactory proof (in Lender's reasonable estimation) of all Required Insurance and all receipts of paid premiums and renewal notices.

I agree to keep my Required Insurance in force until all amounts that I owe Lender under this Agreement or the security instrument are paid in full, my account is terminated, and Lender releases or discharges its security interest.  In case of damage to or loss of the Collateral, I agree to give prompt notice to Lender and the insurance carrier.  If I fail to promptly notify or make proof of loss to the insurance carrier, Lender may (but is not required to) do so on my behalf.

If I do not keep Required Insurance under this Agreement in force at all times Lender may, but is not required to, in Lender's sole discretion, and at my expense, obtain insurance coverage to protect Lender's interest in the Collateral.  I understand and agree that:

    A.  Lender is under no obligation to obtain any particular type or amount of coverage.

    B.  Lender-obtained insurance may, but need not, protect my interests.

    C.  Lender-obtained insurance may, but need not, pay any claim I make.

    D.  the cost of Lender-obtained insurance may be much more than the cost of insurance I could have obtained on my own.

    E.  any amounts disbursed by Lender under this Section to obtain insurance shall become additional debt of mine under this Agreement, secured by this Agreement or the Security Instrument.  This additional debt will be payable upon notice from Lender to me requesting payment.

    F.  I am hereby authorizing Lender to release to, or obtain from, third parties any information necessary to monitor the status of Required Insurance.

    G.  Lender-obtained insurance may be purchased from an affiliate of Lender.

    H.  Lender, or its affiliate, may earn a profit by obtaining this insurance, to the extent permitted by applicable law.

    I.  Lender may, at any time and at its sole option, cancel Lender-obtained insurance.

    J.  Lender has a security interest in any unearned premiums from such insurance;

        1.  I am hereby absolutely assigning to Lender any rights I may have to unearned Lender-obtained insurance premiums; and

        2.  I am hereby authorizing and appointing Lender to be my attorney-in-fact for the purpose of canceling the Lender-obtained insurance and applying the unearned premiums to reduce the account balance upon cancellation of said insurance.

ASSIGNMENT OF UNEARNED INSURANCE PREMIUMS AND POLICY PROCEEDS.  Where allowed by law, I hereby absolutely assign to Lender my rights to any Required Insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, and any other rights under policies covering the Collateral up to, but not in excess of the Total Balance due under this Agreement or security instrument.  I agree that Lender may use any insurance proceeds, and any unearned Required Insurance or credit insurance premium refunds, to reduce the amounts that I owe under this Agreement or the security instrument, whether or not they are due. I authorize Lender to adjust my losses and sign my name to any check, draft, or other papers necessary to obtain such insurance payments. If insurance proceeds or unearned premium refunds paid to Lender do not satisfy all amounts that I owe Lender under this Agreement or the security instrument, I remain responsible for payment of the balance of any amounts due under this Agreement and the security instrument.

CORRECTION; RELEASE.  During the term of this Agreement, I agree to cooperate with Lender to:  (a) correct any clerical errors that were made in connection with loan documents; (b) obtain the correct amounts due to others; and (c) release, or cause to be released, all liens upon payment in full.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**



UXBB91 (05-05-24) C.E. Agreement - without Contract Rate          Page 2

Initials    N/A      N/A
(Initials required for physical form)

**CANCELLATION.** Prior to the distribution of loan proceeds, Lender may withdraw its approval of or commitment to make this loan if Lender reasonably believes that: (a) there are material omissions or misrepresentations in connection with my credit application; (b) there is a material, adverse change in my creditworthiness; (c) there are additional liens on the right, title, or interest of any Collateral to be used for this loan; or (d) a sale or transfer of any right, title or interest in any Collateral to be used for this loan has or will occur that is not agreed to by Lender.

**SEVERABILITY.** Other than the class action waiver described in subsection G of section C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL, the fact that any provision of this Agreement may prove invalid or unenforceable under any law, rule, or regulation of any federal, state, or local court or governmental entity shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**NO ASSUMPTION.** This Agreement shall not be eligible for assumption by any third party without the express written consent of Lender.

**DEFAULT.** Except as prohibited by law or as limited by other provisions of this Agreement, Lender may consider you to be in default of this Agreement if any one or more of the following occurs:

A.  I fail to make any payment, including, but not limited to the Total Amount Due, under this Agreement within 30 days of the payment due date.

B.  I fail to do anything else I have agreed to do in this Agreement.

C.  Any statement or representation I made in my credit application is untrue or incorrect.

D.  I fail to provide Lender with proof of residence or Required Insurance within ten (10) business days after Lender's written request for this information.

E.  I die, become incompetent, generally fail to pay my debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.

F.  Any judgment, levy, attachment, writ of garnishment, or other similar order is entered against me or the Collateral.

G.  Any police or governmental agency seizes or impounds the Collateral or starts forfeiture proceedings against the Collateral.

H.  I sell, lease or otherwise encumber or dispose of the Collateral without Lender's written permission.

**(For Kansas residents only:** Lender believes the foregoing events B. through J. would significantly impair the prospect of payment, performance, or realization of collateral. The burden of establishing the prospect of such significant impairment is on the Lender.)

**GENERAL REMEDIES.** If I am in default of this Agreement, Lender has, subject to any requirements of notice or right to cure or similar provisions, all of the remedies permitted by law and this Agreement, including:

A.  Lender may require me to pay Lender immediately, subject to any rebates required by law, the remaining unpaid balance of the Amount Financed, finance charges, and all other agreed charges. These amounts will accrue interest from the date I am required to pay Lender at the Contract Rate or lesser rate as required by applicable law, until paid in full.

B.  Lender may pay taxes, assessments, or other liens, or make repairs to the Collateral if I have not done so, but Lender is not required to do so. Upon payment by Lender, these amounts will be due immediately and will accrue finance charges at the Contract Rate from the date paid until repaid in full to Lender.

C.  Lender may require me to make the Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and me.

D.  Lender may immediately immobilize, disable, or take possession of the Collateral by legal process or self help, but in doing so Lender may not breach the peace or unlawfully enter onto my premises. Lender may then sell the Collateral and apply what Lender receives, as provided by law, to Lender's actual and reasonable expenses before all other amounts due hereunder.

E.  Except when prohibited by law, I am responsible for any deficiency if the proceeds from the sale of the Collateral do not cover what I owe Lender, and Lender may sue me for those additional amounts.

F.  Lender has the right, but not the obligation, to cancel or request termination of any voluntary credit insurance in the event of default and I hereby appoint Lender as my attorney-in-fact to cancel any such insurance in the event of default, subject to any applicable restrictions under state law. Return of any unearned premium as a result of such request for termination or cancellation will be credited to my loan account.

G.  Lender may accept late payments or partial payments even though marked "Payment in Full" (or similar language) without losing any of its rights under this Agreement, to the extent permitted by law.

By choosing one or more of these remedies, Lender does not waive its right later to elect another remedy. By deciding not to use any remedy, Lender does not give up its right to consider it an event of default if it happens again. Lender's rights hereunder are cumulative, not exclusive.

I agree that, if any notice is required to be given to me of an intended sale or transfer of the Collateral, notice is reasonable if mailed to my last known address, as reflected in Lender's records, at least ten (10) days before the date of the intended sale or transfer, or such other period of time as is required by law.

I agree that, subject to my right to recover such property, Lender may take possession of personal property left in or on the Collateral taken into possession as provided above.

**DELAY IN ENFORCEMENT.** Lender may delay enforcing any of its rights under this Agreement without losing them.

**NOTICES.** If required by law, Lender will provide me with notices under this Agreement which, if mailed, will be sent to my last known address as reflected in Lender's records, including, but not limited to, notices of default, right to cure, and purchase of Required Insurance.

**WAIVER.** Unless law or this Agreement provide otherwise, I hereby waive presentment, notice and protest, and all other demands and notices in connection with the delivery, acceptance, performance, default or endorsement of this Agreement and all suretyship defenses generally to the extent permitted by applicable law.

**SAVINGS CLAUSE.** All agreements between me and Lender are expressly limited so that any interest, finance charges, loan charges, or other fees collected or to be collected from me or any person executing this Agreement shall not exceed, in the aggregate, the highest amount allowed by applicable law. If a law that applies to this Agreement and my loan is finally interpreted so that the interest, finance charges, loan charges, or other fees collected, or to be collected, in connection with this loan exceed the permitted limits, then: (a) any such interest, finance charges, loan charges, or other fees shall be reduced to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded. Lender may choose to make this refund by reducing the remaining unpaid balance that I owe under this Agreement or making a direct payment to me. To the extent permitted by law, my acceptance of any such refund shall constitute a waiver of any right of action I might have arising out of such overcharge.

---

The following notice applies if the proceeds of this loan will be applied in whole or substantial part to a purchase of goods or services from a seller who either refers consumers to the Lender or who is affiliated with the Lender by common control, contract, or business arrangement: **NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**

Initials   N/A          N/A
(Initials required for physical form)

Account Number ▮▮▮▮3874

☐ <u>INTEREST BEARING LOAN.</u>  If checked, I agree to pay to the order of Lender, Principal, plus interest ("finance charges") on the daily unpaid Principal balance computed at the Contract Rate, in the Payment amounts shown in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus all other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. All payments will be applied in the following order: (a) other charges provided for in this Agreement or otherwise allowed by law, and late charges; (b) interest accrued to the date the payment is received and applied by Lender; and (c) if there is any remainder of the payment, the unpaid Principal balance.  Interest on my loan accrues daily on the unpaid Principal balance.  If I pay early, more of my payment will be applied to the unpaid Principal balance.  If I pay late or miss payments, more of my payment will be applied to interest.  This will delay my Principal reduction and cost me more in interest.  The Payment Schedule assumes that I will make each payment on the day it is due; therefore, my final payment will be adjusted as appropriate to reflect any variation in the actual dates my payments are received by the Lender. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the Contract Rate, until paid in full, to the extent permitted by applicable law. Principal is the total of the Amount Financed, plus any Prepaid Finance Charges that I have financed.

☒ <u>PRECOMPUTED LOAN.</u>  I agree to pay the Total of Payments in the amounts and on the dates shown in the Payment Schedule in the TRUTH IN LENDING DISCLOSURES on page 1 hereof, plus any other fees, charges, and other amounts due under this Agreement, at Lender's address set forth in this Agreement, unless otherwise notified, until paid in full. I agree to pay interest on any late charges and any amounts advanced by Lender to purchase Required Insurance that remain unpaid after my final scheduled payment due date, computed at the Contract Rate, until paid in full. All payments will be applied in the following order:  (a)  other charges provided for in this Agreement or otherwise allowed by law, and late charges; and (b) the Total of Payments amount. If any unpaid amounts remain due to Lender after my final scheduled payment due date, I agree to pay interest on these unpaid amounts, computed at the rate of 1.5% per month, until paid in full.

<u>EXTENDED FIRST PAYMENT DUE DATE CHARGE.</u>  $_____15.38____  If an amount is disclosed, I have requested an extended first payment due date and agree to pay the disclosed charge.

<u>PREPAYMENT.</u>  I may prepay all or any part of my loan at any time.  The Prepaid Finance Charges are deemed by the parties to be fully earned on the Date of Loan and are not refundable, to the extent permitted by applicable law.

If my loan is a precomputed loan, and I prepay this loan in full, the amount I owe will be reduced by any unearned finance charges, computed by (a) if the term of this Agreement is sixty-one (61) months or less, the Rule of 78s method, as provided by the Pennsylvania Consumer Discount Company Act, or (b) if the term of this Agreement is more than sixty-one (61) months, the actuarial method.  No refund of less than $1.00 will be made.

<u>LATE CHARGE.</u>  I agree to pay any late charge described in the TRUTH IN LENDING DISCLOSURES herein.

<u>DEFERMENT CHARGE.</u>  If my loan is a precomputed loan and I fail to make a payment with 10 days of its due date and I request a deferment of one or more payments, Lender may at its sole option defer the due dates of all remaining scheduled payments, and I agree to pay a deferment charge of the greater of $1.00 or 1.5% per month of the amount deferred for the period of deferment.  No default charge on the deferred payment may be collected in addition to the deferment fee unless a subsequent delinquency occurs in the payment deferred.

<u>DISHONORED CHECK CHARGE.</u>  If my check or other instrument given to Lender is returned unpaid for any reason, I agree to pay a dishonored check charge of $50.00.

<u>DEFAULT COSTS.</u>  In the event of default, I agree to pay Lender's (a) court costs, (b) reasonable attorney's fees, and (c) costs to realize on any security interest, each if and to the extent permitted by applicable law.

<u>GOVERNING LAW.</u>  This Agreement shall be governed by the laws of the Commonwealth of Pennsylvania and Federal law.

**SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION**



## C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL

**DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties that is more informal than a lawsuit in court. In arbitration, both sides present their case to a neutral third person—the arbitrator—instead of a judge or jury. Arbitration allows for more limited discovery than in court, and an arbitrator's rulings are subject to limited review by courts. Arbitration takes place on an individual basis; class proceedings are not permitted. **UNDER THIS ARBITRATION AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO TRIAL BY JURY OR TO PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION TO THE FULLEST EXTENT PERMITTED BY LAW.**

**1. CLAIMS AND DISPUTES COVERED.** Except as specified in this Arbitration Agreement, Lender and I agree that either party may elect arbitration of any Covered Claim. The term "Covered Claim" is intended to be broadly interpreted and includes the following claims or disputes, whether based in contract, tort, statute, equity, or any other legal theory:

- claims arising out of or relating to **any aspect of the relationship** between Lender and me, including, but not limited to, this Agreement or loan; any previous retail credit agreement ("Retail Contract") assigned to Lender; or any previous loan from or assigned to Lender;

- claims arising out of or relating to any documents, disclosures, advertising, or actions or omissions, including any allegation of fraud or misrepresentation, relating to this or any previous loan or Retail Contract made by or assigned to Lender or to any other of Lender's products or services;

- claims arising out of or relating to negotiations, performance, or breach of this or any previous loan or Retail Contract made by or assigned to Lender;

- claims arising out of or relating to the closing, servicing, collecting, or enforceability of any transaction involving Lender or me;

- claims arising out of or relating to any insurance product, service contract, membership plan, or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender;

- claims arising out of or relating to communications by or on behalf of Lender, including claims under the Telephone Consumer Protection Act, do-not-call regulations, or similar laws or any other claim involving emails, faxes, text messages, or calls placed using automated technology or an artificial or prerecorded voice, including communications relating to offers of unrelated products or services; and

- claims arising out of or relating to the collection, retention, protection, use, disclosure, or transfer of any information about me or my accounts for any of Lender's products or services.

A Covered Claim is subject to arbitration regardless of when it arose, whether it is before the date of this or any prior Agreement between Lender and me (such as claims relating to advertising or disclosures or claims involving predecessors), or whether the claim arises after the termination of this Agreement. This Arbitration Agreement shall survive the termination of any loan or Retail Contract between Lender and me. This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Agreement.

**2. COVERED CLAIMS BY OR AGAINST THIRD PARTIES.** This Arbitration Agreement also covers claims brought by or against my and Lender's Third Parties. My Third Parties consist of any co-owners of my account, any authorized or unauthorized users or beneficiaries of my account or the loan, and each of those person's assignees, heirs, trustees, agents, or other representatives. The Lender's Third Parties consist of Lender's employees, officers, agents, or directors; Lender's affiliate corporations; any entities which provided insurance in connection with this or any previous transactions between me and Lender; any third parties that assigned Retail Contracts or other agreements to Lender; any third party that provides me any product or service which I purchased with the assistance or involvement of Lender; any third party that participates in efforts to collect a debt owed under or to repossess collateral pursuant to this or any other Agreement or loan issued by or assigned to Lender, any other third party providing services to or contracting with Lender or any of Lender's Third Parties; and any of the employees, officers, agents, directors, affiliates, predecessors, successors, or assigns of such third parties. Affiliate corporations are Lender's past, present, and future parent corporations, subsidiary corporations, and sister corporations, including each of those corporation's predecessors, successors, and assigns. Lender's affiliates include but are not limited to OneMain Consumer Loan, Inc., iLoan, OneMain Home Equity, Inc., OneMain Financial Services, Inc., and Yosemite Insurance Company.

**3. MATTERS NOT COVERED BY ARBITRATION.** All claims for damages must be arbitrated, but I agree that Lender does not have to initiate arbitration before exercising lawful self-help remedies or judicial remedies of garnishment, repossession, replevin or foreclosure, but instead may proceed in court for those judicial remedies. I may assert in court any defenses I may have to Lender's claims in such a lawsuit, but any claim or counterclaim for rescission or damages I may have arising out of, relating to, or in connection with Lender's exercise of those remedies must be arbitrated. In addition, instead of pursuing arbitration, either Lender or I also have the option to bring an individual lawsuit in small claims or equivalent court, so long as the action remains in that court and is not removed or appealed to a court of general jurisdiction. If these limitations on removal or appeal of small claims court actions are unenforceable, the dispute instead shall be arbitrated. Neither I nor Lender shall be deemed to have waived any arbitration rights by the fact of having exercised any self-help or judicial remedies of garnishment, repossession, replevin or foreclosure or previously filing different claims in small claims court. In addition, disputes over a claim or whether a dispute can or must be arbitrated, including disputes over the validity and enforceability of this Arbitration Agreement or whether sections 5, 10, or 12 of this Arbitration Agreement have been violated, are for a court to decide. Nothing in this Arbitration Agreement precludes me from bringing issues to the attention of federal, state, or local agencies or law enforcement. Such agencies can, if the law allows, seek relief against Lender on my behalf.

**4. PRE-ARBITRATION NOTICE OF DISPUTE AND INFORMAL RESOLUTION.** A party who intends to seek arbitration must first send to the other party a written Notice of Dispute ("Notice"). The Notice to Lender may be sent by U.S. mail or professional courier service addressed to OneMain Financial, Legal Department, 100 International Drive, 16th Floor Baltimore, MD 21202 ("Notice Address"). The Notice to me may be sent to the address on file with my account. The Notice must include all of the following information: (a) my name; (b) my account number; (c) a description of the nature and basis of the claim or dispute; (d) an explanation of the specific relief sought and the basis for the calculations; (e) the signature of the party sending the Notice; and (f) if I am sending the Notice and have retained an attorney, my signed statement authorizing Lender to disclose my confidential account records to my attorney if necessary in resolving my claim.

After the Notice containing all of the information required above is received, within 60 days either party may request a conference to discuss informal resolution of the dispute ("Informal Settlement Conference"). If timely requested, the Informal Settlement Conference will take place at a mutually agreeable time by telephone or videoconference. I and a Lender representative must both personally participate in a good-faith effort to resolve the dispute informally without the need to proceed with arbitration. Any counsel representing Lender or me also may participate. The requirement of personal participation in an Informal Settlement Conference may be waived only if both Lender and I agree in writing.

**Any applicable statute of limitations for the claims and relief set forth in a Notice** will be tolled during the period between the date that a Notice is received by the other party and the later of (i) 60 days after receipt of the Notice; or (ii) if an Informal Settlement Conference is timely requested, seven days after the request is withdrawn or the Informal Settlement Conference is completed (the "Informal Resolution Period").

**5. COMMENCING ARBITRATION.** An arbitration proceeding may be commenced by filing a demand for arbitration with the American Arbitration Association ("AAA") only if Lender and I do not reach an agreement to resolve the claim during the Informal Resolution Period. (If your Notice is part of a mass arbitration, section 10 contains additional requirements for commencing arbitration). A court will have authority to enforce this section 5, including the power to enjoin the filing or prosecution of arbitrations without first providing a fully complete Notice and participating in a timely requested Informal Settlement Conference. Unless prohibited by applicable law, the arbitration provider shall not accept or administer any arbitration unless the claimant has complied with the Notice and Informal Settlement Conference requirements of section 4.

**6. ARBITRATION FORUM AND RULES.** The arbitration will be conducted under the Consumer Arbitration Rules ("AAA Rules") of the AAA in effect at the time arbitration is started, as modified by this arbitration provision, and be administered by the AAA. (If the AAA is not available or unwilling to administer arbitrations consistent with this Arbitration Agreement or you object to the AAA for good cause, another arbitration provider shall be selected by the parties or, if the parties cannot agree on a provider, by the court.) The AAA Rules are available online at https://www.adr.org/consumer or by writing to the Notice Address.

**7. SELECTION OF ARBITRATOR.** The AAA maintains lists of approved arbitrators. The AAA will provide Lender and me each a list of seven possible arbitrators. Lender and I will each have an opportunity to strike three persons from that list. I will make the first strike, and Lender and I will alternate in making strikes after that. After the last strike, the remaining person shall then serve as arbitrator. The arbitrator must be a lawyer with at least 10 years of experience or a retired judge.

### SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION

Initials _N/A_____    _N/A_____
(Initials required for physical form)



UXAE71  (12-04-22) C.E. Agreement                    Page 5

Account Number ▮3874

**8. COSTS OF ARBITRATION.** The AAA charges certain fees in connection with arbitration proceedings. I may have to bear some of these fees; however, if I am not able to pay my share of those fees or think they are too high, Lender will consider any reasonable request to bear those fees, so long as I have fully complied with the requirements of sections 4, 5, and 10 for any arbitration I initiate. Lender will also bear any costs Lender is required to bear by law or by the terms of any other agreement with me.

**9. CONDUCT OF PROCEEDINGS.** All issues are for the arbitrator to decide, except as specified in this Arbitration Agreement. In resolving the parties' claims, the arbitrator shall apply all applicable substantive law and honor all privileges (such as the attorney-client privilege and attorney work product doctrine) recognized in law. The arbitrator may consider rulings in other arbitrations involving other claimants, but an arbitrator's ruling will not be binding in proceedings involving different claims. Except as specified in section 12 below, the arbitrator can award the same damages and relief that a court can award under applicable law. During the arbitration, the amount of any settlement offer made to or by you shall not be disclosed to the arbitrator until after the arbitrator determines the relief, if any, to which you are entitled. If you had fully complied with the Notice and Informal Settlement Conference requirements, did not disclose the amount of any settlement offers during the arbitration, and the arbitrator awards you more than was offered in the last written settlement offer to you before the arbitrator was selected, your recovery shall be $1,000 in lieu of any smaller award (the "Minimum Recovery"). In determining if an award is greater than the value of the last written settlement offer, the calculation should not include amounts offered or awarded for attorneys' fees and expenses. The arbitrator may resolve disputes and make rulings as to eligibility for and payment of the Minimum Recovery upon request from either party made within 14 days of the arbitrator's ruling on the merits.

**10. MASS FILINGS.** If 25 or more claimants submit Notices or file arbitrations raising similar claims and are represented by the same or coordinated counsel, all of the cases must be resolved in arbitration in stages using staged bellwether proceedings if they are not resolved prior to arbitration as set forth in section 4. You agree to this process even though the arbitration of your claim might be delayed. In the first stage, the parties shall each select up to 10 cases per side (20 cases total) to be filed in arbitration and resolved individually in accordance with this arbitration agreement, with each case assigned to a separate arbitrator. In the meantime, no other cases may be filed in arbitration, and the AAA shall not accept, administer, nor demand payment for AAA fees for arbitrations commenced in violation of this section 10. After the first stage of bellwether proceedings is complete, the parties shall engage in a single mediation of all remaining cases, and Lender will pay the mediation fee. If the parties are unable to resolve the remaining cases, the process of filing up to 20 cases in arbitration to be resolved individually by different arbitrators, followed by mediation, will be repeated. If any cases remain, the process will be repeated until all claims are resolved except that the total number of cases filed in arbitration each round shall increase to 50, and mediation is optional at the agreement of both sides. If these mass filing procedures apply to a claimant's Notice of Dispute, the Informal Resolution Period applicable to the claims and relief set forth in that Notice will be extended until that Notice is selected for a bellwether proceeding, withdrawn, or otherwise resolved. A court will have the authority to enforce this section 10 and, if necessary, to enjoin the filing or prosecution of arbitrations or the assessment or collection of AAA fees. If, after exhaustion of all appeals, a court determines that the process in this section of staging the filing of cases in arbitration is unenforceable, then this section shall be severed and the cases may be filed in arbitration, but the Minimum Recovery in section 9 will be unavailable.

**11. ENFORCEMENT AND APPEAL OF DECISION.** The decision and judgment of the arbitrator shall be final, binding and enforceable in any court having jurisdiction over the parties and the dispute; however, for Covered Claims seeking or resulting in an award of $100,000 or more (including costs and attorneys' fees), any party may appeal the award, at its own cost, except as provided by law, to a three-arbitrator panel appointed by the AAA. That panel will reconsider from the start any aspect of the initial award that either party asserts was incorrectly decided. The decision of the panel shall be by majority vote and shall be final and binding, except as provided below. The arbitrator's (or panel's) findings, decision and award shall be subject to judicial review on the grounds set forth in the Federal Arbitration Act.

**12. REQUIREMENT OF INDIVIDUAL ARBITRATION.** The arbitration may award relief (including, but not limited to, damages, restitution, and declaratory and injunctive relief) only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **Lender and I agree that each may bring claims against the other only in its or my individual capacity and not as a plaintiff or class member in any purported class, representative, or private attorney general proceeding.** Further, unless both Lender and I agree otherwise, the arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of a class, representative, or private attorney general proceeding. If, after exhaustion of all appeals, any of these prohibitions on non-individualized relief; class, representative, and private attorney general claims; and consolidation is found to be unenforceable as to a particular claim or with respect to a particular request for relief (such as a request for injunctive relief), then the parties agree that such a claim or request for relief shall be decided by a court after all other claims and requests for relief are arbitrated.

**13. FUTURE CHANGES TO ARBITRATION AGREEMENT.** Notwithstanding any provision in this Agreement to the contrary, Lender and I agree that if Lender makes any future change to this Arbitration Agreement (other than a change to the Notice Address), I may reject any such change by sending Lender written notice with 30 days of the change to the Notice Address. This is not a rejection of arbitration altogether. By rejecting any future change, I am agreeing that we will arbitrate any Covered Claim in accordance with this version of the Arbitration Agreement.

## D. ENTIRE AGREEMENT/NOTICES/SIGNATURE

**ENTIRE AGREEMENT.** This Agreement contains the entire agreement of the parties with regard to the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein. This Agreement cannot be modified in any respect except by an amendment in writing signed by the parties. All notices under this Agreement shall be in writing and directed to the parties at the addresses shown at the beginning of this Agreement or to such other address as a party may specify by notice given in accordance with this paragraph.

> **BY SIGNING BELOW, I SIGNIFY THAT I HAVE READ, UNDERSTOOD, AND AGREED TO THE TERMS AND CONDITIONS OF THIS AGREEMENT, INCLUDING THE ARBITRATION AGREEMENT THAT PROVIDES, AMONG OTHER THINGS, THAT EITHER LENDER OR I MAY REQUIRE THAT CERTAIN DISPUTES BETWEEN US BE SUBMITTED TO BINDING ARBITRATION. IF LENDER OR I ELECT TO USE ARBITRATION, WE AGREE THAT WE WILL HAVE THEREBY WAIVED OUR RIGHTS TO TRIAL BY JURY OR JUDGE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE DISPUTE WILL BE DECIDED BY AN ARBITRATOR, AND THAT THE DECISION OF THE ARBITRATOR WILL BE FINAL. ARBITRATION WILL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, EXCEPT AS OTHERWISE PROVIDED IN THIS ARBITRATION AGREEMENT.**
>
> UXARB2 (07-15-12)

I agree that, on or before the date on page 1 hereof ("the Date of Agreement"), I have received and read a fully completed, legible copy of all of the documents comprising this Agreement, and the Privacy Notice and agree to be bound thereby.

**Consent to be Contacted by Telephone.** I expressly consent and agree that Lender may contact me at any telephone number that I provide Lender now or in the future, including a number for a cellular phone or other wireless device and a number that I later convert to a cellular phone or other wireless device. I understand that this consent means that I agree to receive voice calls using automatic telephone dialing systems, prerecorded or artificial voice messages and text messages by or on behalf of Lender for transactional purposes, such as the collection and servicing of my loan account with Lender.

**NOTICE TO CONSUMER: 1. Do not sign this paper before you read it. 2. You are entitled to a copy of this paper. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.**

| | | |
|---|---|---|
| x  N/A | x  E-SIGNED by SHOUKRY FAUNTLEROY on 2024-05-10 21:06:32 GMT | L.S. |
| Witness | Borrower     SHOUKRY FAUNTLEROY | |
| x  N/A | x | L.S. |
| Witness | Co-Borrower | |
| x                                    L.S. | x | L.S. |
| Co-Maker | Co-Maker | |
| Print Name: | Print Name: | |

Report: AA0912P                     Readable Transaction History Search Results                     5/22/2025 15:05:00
Run By: H2216833                                                                                    Page:    1

Branch: 4668  Account: ▓3874  Borrower: FAUNTLEROY, SHOUKRY

| Transaction Details | Date | Eff. Date | Amount | Applied to Balance | Applied to Interest | Applied to Late Chrg | Applied to Insurance | Applied to NSF | New Balance |
|---|---|---|---|---|---|---|---|---|---|
| PayNearMe | 6/13/24 | | 371.00 | 371.00 | .00 | .00 | .00 | .00 | 20964.78 |
| PayNearMe | 7/18/24 | | 355.34 | 355.34 | .00 | .00 | .00 | .00 | 20609.44 |
| Check Capture Voucher | 8/01/24 | | 8400.00 | 8400.00 | .00 | .00 | .00 | .00 | 12209.44 |
| Check Capture Voucher | 8/01/24 | | 1500.00 | 1500.00 | .00 | .00 | .00 | .00 | 10709.44 |
| PayNearMe | 8/01/24 | | 2500.00 | 2500.00 | .00 | .00 | .00 | .00 | 8209.44 |
| PayNearMe | 8/01/24 | | 634.73 | 634.73 | .00 | .00 | .00 | .00 | 0.00 |
| Retract-PayNearMe | 10/09/24 | 8/01/24 | -634.73 | -634.73 | .00 | .00 | .00 | .00 | 8209.44 |
| Other Charges | 10/09/24 | | -8400.00 | -8400.00 | .00 | .00 | .00 | .00 | 16609.44 |
| PayNearMe | 10/09/24 | 8/01/24 | 634.73 | 634.73 | .00 | .00 | .00 | .00 | 15974.71 |

Note: Only transactions posted up to the prior close of business are shown. For more recent transactions, see Pending Transaction
below. For ease of viewing, this information has been summarized from the OneMain customer account system that constitutes its
official business record of this account. While every effort has been made to ensure accuracy, this may not be the complete
transaction history. This summary is not an official business record of OneMain.

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: 156 Eagles Glen Plz., Ste. 101 East Stroudsburg, PA 18301  (Monroe County, Pennsylvania)

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                                       Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?       Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?     Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  ***see certification below***
- ☒ 16. All Other Federal Question Cases. *(Please specify):* Truth In Lending Act, 15 U.S.C. § 1601 et seq.

*B.* ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SHOUKRY FAUNTLEROY

**(b)** County of Residence of First Listed Plaintiff   Monroe County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

ONEMAIN FINANCIAL

County of Residence of First Listed Defendant   Monroe County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☒ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1601 et seq.

Brief description of cause:
Truth In Lending Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   $369,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
9/2/2025

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.